(No. 62132.—

S. KELLERMAN, *et al.*, Appellees, v. MCI TELECOM-MUNICATIONS CORPORATION, Appellant.—PHYLLIS HESSE, Appellee, v. MCI TELECOM-MUNICATIONS CORPORATION, Appellant.

*Opinion filed May 21, 1986.*

SIMON, J., took no part.

Chester T. Kamin, Richard J. Gray, Darryl M. Bradford, Patricia Lee Refo, and Robert S. Markin (Jenner & Block of Chicago, of counsel), for appellant.

Russell C. Green and Alvin W. Block, of Block, Levy & Associates, of Chicago, for appellee S. Kellerman *et al.*

Kevin M. Forde, Ltd., of Chicago (Kevin M. Forde, of counsel), and Howard Z. Gopman & Associates, of Skokie (Howard Z. Gopman and Katrina Veerhusen, of counsel), for appellee Phyllis Hesse.

JUSTICE MORAN delivered the opinion of the court:

Plaintiffs, subscribers of defendant MCI's long-distance telephone service, brought these class action suits in the circuit court of Cook County alleging that certain advertisements, which described defendant's service charges, violate the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*) and the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 311 *et seq.*). Plaintiffs also allege that defendant's advertising practices constitute a breach of contract and common law fraud. They seek damages and an accounting for themselves and other persons similarly situated.

After the cases were consolidated by the trial court, defendant moved to dismiss the actions, contending that the State-law claims are preempted by the Federal Communications Act of 1934 (Communications Act) (47 U.S.C. sec. 151 *et seq.* (1982)). Alternatively it requested that the court stay the actions and refer plaintiffs' claims to the Federal Communications Commission (FCC) based on the doctrine of primary jurisdiction, or stay the actions pursuant to section 2—619(a)(3) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(3)). The trial court denied defendant's motion to dismiss or stay the actions. It also refused defendant's request to certify the preemption issue for interlocutory appeal. (See 87 Ill. 2d R. 308.) Thereafter, defendant appealed the denial of the stay. (87 Ill. 2d R. 307.) The appellate court, in addition to affirming the denial of the stay, determined that it had jurisdiction to consider the preemption issue even though the trial

court had not certified the issue for interlocutory review. The appellate court held that plaintiffs' State-law claims are not preempted by the Communications Act. (134 Ill. App. 3d 71.) We allowed defendant's petition for leave to appeal (94 Ill. 2d R. 315).

Defendant's principal contention is that plaintiffs' claims are preempted by the Communications Act (47 U.S.C. sec. 151 *et seq.* (1982)). Defendant asserts that the "comprehensive nature" of the Communications Act demonstrates that Congress "intended to occupy the entire field of interstate long distance telephone service." It argues that the conduct challenged by plaintiffs is "at the center of the occupied field" and that, therefore, plaintiffs' State-law claims are preempted. Plaintiffs contend, however, that their actions are not preempted, asserting that the only conduct being challenged is defendant's advertising practices and not the manner in which it provides interstate telephone service. Defendant raises two alternative arguments as to why this court should either dismiss or stay these actions. First, it contends that under the doctrine of primary jurisdiction the actions should be stayed and plaintiffs' claims referred to the FCC. Additionally, defendant requests that the suits be stayed pursuant to section 2—619(a)(3) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(3)), asserting that there is a Federal action pending which involves the same parties and same cause.

The record shows that plaintiffs originally brought four separate actions against defendant in the circuit court. Three of the actions, filed by plaintiffs S. Kellerman, Bernard Turovitz and Louis T. Davis & Associates, Inc. (Davis), were consolidated by the trial court for all purposes. The action brought by Phyllis Hesse was consolidated with the other actions for pretrial purposes only. The allegations contained in all four complaints are substantially similar in that they attack certain of

defendant's advertisements and promotional material as fraudulent and deceptive.

The advertisements and promotional material in question compare the cost of defendant's long-distance telephone service with the cost of a service provided by a competitor, American Telephone & Telegraph Company (AT&T). Plaintiffs allege that in order to induce them to purchase its service, defendant disseminated certain advertisements and promotional materials through various media which claimed that "although its rates are substantially lower" than AT&T's, "its billing practices and procedures were identical to those of" AT&T. They allege that AT&T charges its customers only for completed calls and no charge is made to customers for calls which are initiated but not completed, *i.e.*, where the recipient does not answer or the caller terminates the call before it is answered. In contrast, plaintiffs allege that defendant has billed its customers for uncompleted calls.

Plaintiffs further allege that it was defendant's practice to impose a surcharge in situations where the telephone rang six or more times before it was answered—a charge not customarily imposed in the industry. It also is alleged that every time customers used defendant's service they paid a local telephone charge which AT&T customers did not have to pay. Plaintiffs do not challenge the reasonableness of the additional charges imposed by defendant, but only the fact that its advertising did not disclose that the additional charges would be made. It is alleged that through these advertisements and promotions, defendant "engaged in a course of conduct to falsely represent to the plaintiff[s] and the general public that its practice and policy [were] *** to bill its customers only for the actual time of communication during completed long distance calls" when in fact its practice was to bill its customers for uncompleted calls and to impose a surcharge when a telephone rang six or more

times before it was answered. Plaintiffs allege that defendant's conduct constitutes common law fraud, a breach of contract, and that it violates the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 311 *et seq.*) and the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*).

Before proceeding with the issues raised by defendant, we find it necessary to determine whether the preemption issue is properly before this court. Plaintiffs Kellerman, Turovitz and Davis contend that since the trial court refused to certify the preemption question for interlocutory appeal in accordance with Supreme Court Rule 308 (87 Ill. 2d R. 308), the appellate court did not have jurisdiction to consider it. As such, they assert that the issue is not properly before this court.

The appellate court, relying on this court's decision in *May Department Stores Co. v. Teamsters Union Local No. 743* (1976), 64 Ill. 2d 153, held that it had jurisdiction to consider whether plaintiffs' actions are preempted by the Communications Act. In *May*, store owners sought to enjoin a union from soliciting store employees and distributing union literature in the store's parking lot, claiming that the union's activities violated State criminal trespass làws. The union contended that Federal law preempted the authority of the State courts to issue an injunction barring its organizational activities on store property. The trial court granted the preliminary injunction, and the union perfected an interlocutory appeal pursuant to Rule 307. On appeal from the appellate court, this court viewed the union's preemption argument as a challenge to the State courts' authority to issue the preliminary injunction and, therefore, a proper subject on interlocutory appeal.

After reviewing the record in the present case in light of *May*, we believe that the appellate court was

correct in finding that it had jurisdiction to address the preemption issue. Defendant's Federal preemption argument brings into issue the authority of the trial court to enter the order appealed from and, thus, the argument is properly considered on interlocutory appeal. Therefore, we will consider defendant's argument that plaintiffs' State-law actions are preempted by the Communications Act.

The preemption doctrine, which has its origin in the supremacy clause of the Federal Constitution (U.S. Const., art. VI, cl. 2), provides that Federal law will in some instances override or preempt State laws on the same subject. (*Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 229-31, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1151-53.) The key inquiry in all preemption cases is the objective or purpose of Congress in enacting the particular statute. The doctrine requires courts to examine the Federal statute in question to determine whether Congress intended it to supplant State laws on the same subject. (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 208, 85 L. Ed. 2d 206, 213, 105 S. Ct. 1904, 1910.) Generally this is no easy task because rarely does Congress, in enacting legislation, expressly provide that concurrent State laws will be preempted. Rather, a court must usually divine for itself whether the statute evidences an intent by Congress to preempt State law.

Although there is no "rigid formula or rule which can be used" to determine if Congress intended Federal law to preempt plaintiffs' actions for fraud, deceptive advertising and breach of contract (*Hines v. Davidowitz* (1941), 312 U.S. 52, 67, 85 L. Ed. 581, 587, 61 S. Ct. 399, 404), our "consideration of that question is guided by familiar and well-established principles" (*Capital Cities Cable, Inc. v. Crisp* (1984), 467 U.S. 691, 698, 81 L. Ed. 2d 580, 588, 104 S. Ct. 2694, 2700), which the Supreme Court has enumerated as follows:

"Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because '[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose.' [Citation.]

Even where Congress has not completely displaced state regulation in a specific area, State law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' [citation] or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' ***." *Fidelity Federal Savings & Loan Association v. De la Cuesta* (1982), 458 U.S. 141, 153, 73 L. Ed. 2d 664, 675, 102 S. Ct. 3014, 3022.

The express purpose of the Communications Act (47 U.S.C. sec. 151 *et seq.*(1982)) is to "make available, so far as possible, to all the people of the United States a rapid, efficient *** communication service with adequate facilities at reasonable charges." (47 U.S.C. sec. 151 (1982).) To that end, the Act applies "to all interstate and foreign communication by wire or radio *** and to all persons engaged within the United States in such communication" (47 U.S.C. sec. 152(a) (1982)), and provides that an interstate telephone carrier's "charges, practices, classifications, and regulations for and in connection with [its] communication service, shall be just and reasonable." (47 U.S.C. sec. 201(b) (1982).) Under section 206, any carrier which violates a provision of the Act is liable "to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation." (47 U.S.C. sec. 206 (1982).) An in-

jured party may file a complaint against the carrier with the FCC (47 U.S.C. sec. 207 (1982)), which has the power "to investigate the matters complained of" (47 U.S.C. sec. 208 (1982)), and to award damages when appropriate (47 U.S.C. sec. 209 (1982).) Alternatively, an aggrieved party can file an action against the carrier in Federal district court. 47 U.S.C. sec. 207 (1982).

Defendant essentially makes two arguments as to why plaintiffs' actions are preempted by the Communications Act. First, it argues that the "comprehensive nature" of the Act, as briefly outlined above, demonstrates that Congress "intended to occupy the entire field of long distance telephone service" to the exclusion of State law. It asserts that the conduct challenged here falls within the broad field of interstate long-distance telephone service, and, hence, is preempted. Defendant's second argument is much narrower. While conceding for purposes of argument that the Act may not preempt all State regulation of long-distance telephone carriers, it contends that the Act specifically governs a carrier's "charges, practices and tariffs." Defendant maintains that plaintiffs, although "artfully emphasizing advertising and state law theories of liability," in reality are challenging "FCC-regulated charges, practices and tariffs." It argues that since plaintiffs are attacking "charges, practices and tariffs" regulated by Federal law, the State-law actions are preempted by the Act.

While we agree with defendant that the Communications Act represents a "broad scheme for the regulation of interstate service by communications carriers" (*Ivy Broadcasting Co. v. American Telephone & Telegraph Co.* (2d Cir. 1968), 391 F.2d 486, 490), we cannot agree that Congress intended to supplant all State regulation of interstate telephone carriers, no matter how unrelated the State regulation is from Congress' objective of creating an interstate telephone network that is rapid, effi-

cient and reasonably priced. The Act contains a saving clause which provides that "[n]othing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." (47 U.S.C. sec. 414 (1982).) Thus, to argue, as defendant has, that Congress has "occupied the field of interstate long distance telephone service" does not answer the question of whether these particular State-law actions are preempted by the Act. Rather, as the appellate court in this case keenly observed, the relevant inquiry is what are the "precise contours" of the field that Congress has chosen to occupy. 134 Ill. App. 3d 71, 74.

Little guidance can be gleaned from the Communications Act itself, and few cases have discussed Federal preemption with respect to the Act. In *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.* (2d Cir. 1968), 391 F.2d 486, the court concluded that an action against two telephone companies for the negligent "installation and testing" of telephone lines was governed exclusively by Federal common law. The court, reasoning that the "congressional purpose of uniformity and equality of rates should be taken to imply uniformity and equality of service," stated that "questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law." (391 F.2d 486, 491.) The *Ivy* court, however, did not discuss the scope of the saving clause of the Act, section 414 (47 U.S.C. sec. 414 (1982)). Subsequent cases have viewed section 414 as "preserving causes of action for breaches of duties distinguishable from those created under the Act." *Comtronics, Inc. v. Puerto Rico Telephone Co.* (1st Cir. 1977), 553 F.2d 701, 707-08 n.6.

In *Ashley v. Southwestern Bell Telephone Co.* (W.D. Tex. 1976), 410 F. Supp. 1389, the court, relying on sec-

tion 414 of the Act, held that a State-law action brought against an FCC-regulated carrier for invasion of privacy was not preempted by the Act. Similarly, in *Bruss Co. v. Allnet Communication Services, Inc.* (N.D. Ill. 1985), 606 F. Supp. 401, a case closely analogous to the case at bar, the court held that State-law claims alleging common law fraud and violations of Illinois' deceptive trade and consumer fraud acts were not preempted by the Act. In that case, it was alleged that the defendants had charged plaintiffs and other long-distance customers rates in excess of the tariffs filed with the FCC. The court, reasoning that the State claims "challenge[d] conduct that is not contemplated by the Communications Act," held that the actions were preserved under section 414. 606 F. Supp. 401, 411.

In interpreting a statutory provision, courts " 'will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute *** and the objects and policy of the law.' " (*Stafford v. Briggs* (1980), 444 U.S. 527, 535, 63 L. Ed. 2d 1, 9, 100 S. Ct. 774, 780.) Therefore, it is implausible to think that section 414 of the Act preserved all State-law remedies affecting interstate telephone carriers no matter how repugnant those State laws are to the purposes and objectives of Congress. It is reasonable to presume that State laws which interfere with Congress' objective of creating "a rapid, efficient, Nationwide, *** communication service with adequate facilities at reasonable charges" (47 U.S.C. sec. 151 (1982)), such as State attempts to regulate interstate carriers' charges or services, would be preempted by the Act. (See, *e.g., Komatz Construction, Inc. v. Western Union Telegraph Co.* (1971), 290 Minn. 129, 186 N.W.2d 691 (action against telegraph company for damages caused by delay in transmission of telegram is governed by Federal law).) However, we believe that section 414, when considered

in the context of the entire act, should be construed as preserving State-law "causes of action for breaches of duties distinguishable from those created under the Act." (*Comtronics, Inc. v. Puerto Rico Telephone Co.* (1st Cir. 1977), 553 F.2d 701, 708.) State-law remedies which do not interfere with the Federal government's authority over interstate telephone charges or services, and which do not otherwise conflict with an express provision of the Act, are preserved by section 414.

Defendant argues that plaintiffs, while "artfully" pleading fraud and deceptive-advertising claims, in reality "seek recovery for federally regulated charges." As such, it asserts that plaintiffs' actions are preempted by the Act. Although a similar argument has prevailed in at least one Federal district court (see *In re Long Distance Telecommunications Litigation* (E.D. Mich. 1984), 598 F. Supp. 951), we think the better view is that plaintiffs' actions are not preempted by the Act. (See *Bruss Co. v. Allnet Communication Services, Inc.* (N.D. Ill. 1985), 606 F. Supp. 401.) The subject matter of plaintiffs' complaints involves neither the quality of defendant's service nor the reasonableness and lawfulness of its rates. Plaintiffs only allege that defendant disseminated fraudulent and deceptive advertisements concerning the cost of its long-distance telephone service. As such, plaintiffs seek to hold defendant to the same standards as they would any other business which advertises on a nationwide basis and which, in the course of its business, is subject to regulation from a number of Federal and State agencies. Moreover, these actions do not present "an obstacle to the accomplishment" of the Federal policy of promoting a "rapid, efficient *** communication service with adequate facilities at reasonable charges." (47 U.S.C. sec. 151 (1982).) The prosecution of these claims will in no way interfere with the delivery of long-distance telephone service to defendant's customers, and any possible

effect the litigation could have on defendant's telephone rates is speculative at best. Finally, no Federal statute or regulation has been brought to our attention which would expressly prohibit these actions. Therefore, we find that Congress did not intend to occupy the field of interstate telephone service to the extent of barring these State-law claims for fraud, breach of contract and deceptive practices, and hold that plaintiffs' actions are not preempted.

Alternatively, defendant argues that the doctrine of primary jurisdiction requires these actions to be stayed pending review of the claims by the FCC.

The doctrine of primary jurisdiction is "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." (*United States v. Western Pacific R.R. Co.* (1956), 352 U.S. 59, 63, 1 L. Ed. 2d 126, 132, 77 S. Ct. 161, 165.) The doctrine provides that even when a court has jurisdiction over a matter, it should in some instances stay the judicial proceedings pending referral of the controversy, or a portion of it, to an administrative agency having expertise in the area. (*Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 303-04, 48 L. Ed. 2d 643, 654-55, 96 S. Ct. 1978, 1986-87.) The Supreme Court, in *Far East Conference v. United States* (1952), 342 U.S. 570, 96 L. Ed. 576, 72 S. Ct. 492, described the doctrine as follows:

> "[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more ration-

ally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." (342 U.S. 570, 574-75, 96 L. Ed. 576, 582, 72 S. Ct. 492, 494.)

Thus, under the doctrine a matter should be referred to an administrative agency when it has a specialized or technical expertise that would help resolve the controversy, or when there is a need for uniform administrative standards. (*United States v. Western Pacific R.R. Co.* (1956), 352 U.S. 59, 64, 1 L. Ed. 2d 126, 132, 77 S. Ct. 161, 165.) Conversely, when an agency's technical expertise is not likely to be helpful, or there is no need for uniform administrative standards, courts should not relinquish their authority over a matter to the agency. *Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 304, 48 L. Ed. 2d 643, 655, 96 S. Ct. 1978, 1987.

In *Nader*, the plaintiff was "bumped" from a flight because the defendant airline, as was the industry custom, had overbooked the flight. Civil Aeronautics Board (CAB) regulations required airlines to offer "denied boarding compensation" to bumped passengers. Instead of accepting the offered compensation, however, the plaintiff brought a common law action in Federal district court, alleging that the airline's failure to inform him in advance of its overbooking practices constituted a fraudulent misrepresentation. The district court found for the plaintiff, but the court of appeals reversed, holding that the doctrine of primary jurisdiction required referral of the matter to the CAB so that the agency could determine whether the airline's failure to disclose the overbooking practice was "deceptive" within the meaning of section 411 of the Federal Aviation Act of 1958 (49 U.S.C. sec. 1381 (1970).) The Supreme Court in *Nader* reversed, concluding that "considerations of uniformity

in regulation and of technical expertise do not call for prior reference to the Board." (426 U.S. 290, 304, 48 L. Ed. 2d 643, 655, 96 S. Ct. 1978, 1987.) The court explained that the plaintiff's common law action for fraudulent misrepresentation did not challenge the propriety or reasonableness of the overbooking practice, and thus, an "informed evaluation of the economics or technology of the regulated industry" was not likely to be helpful in resolving the case. (426 U.S. 290, 305-06, 48 L. Ed. 2d 643, 656, 96 S. Ct. 1978, 1987.) Moreover, the court observed that the "standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts." 426 U.S. 290, 305, 48 L. Ed. 643, 656, 96 S. Ct. 1978, 1987.

Our review of the above authorities, particularly the *Nader* case, convinces us that referral of these actions to the FCC is not required by the primary-jurisdiction doctrine. Like the plaintiff in *Nader*, the plaintiffs here do not contest the reasonableness or lawfulness of defendant's charges or billing practices, but only seek recovery for defendant's failure to disclose certain facts. In resolving the dispute it will not be necessary to evaluate "the economics or technology of the regulated industry" (*Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 305, 48 L. Ed. 2d 643, 96 S. Ct. 1978, 1987), and, thus, we see little benefit, if any, in referring plaintiffs' claims to the FCC. Plaintiffs allege common law claims and violations of State statutes. The legal and factual issues that are involved in these cases are standard fare for judges, and, consequently, must be deemed to be "within the conventional competence of the courts." (*Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 305-06, 48 L. Ed. 2d 643, 656, 96 S. Ct. 1978, 1987.) Therefore, we reject defendant's argument that the primary-jurisdiction doctrine requires that these actions be stayed pending referral to the FCC.

Defendant's final contention is that the trial court should have stayed these actions pursuant to section 2—619(a)(3) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(3).) Section 2—619(a)(3) allows a defendant to move for a dismissal or stay whenever "there is another action pending between the same parties for the same cause." (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(3).) Defendant claims that a class action suit that is pending in the United States District Court for the Eastern District of Michigan involves the "same cause" and "same parties".

Section 2—619(a)(3) is designed to avoid duplicative litigation and is to be applied to carry out that purpose. (*People ex rel. Department of Public Aid v. Santos* (1982), 92 Ill. 2d 120, 127; *People ex rel. Phillips Petroleum Co. v. Gitchoff* (1976), 65 Ill. 2d 249, 255.) Nevertheless, even when the "same cause" and "same parties" requirements are met, section 2—619(a)(3) does not mandate automatic dismissal. Rather, the decision to grant or deny defendant's section 2—619(a)(3) motion is discretionary with the trial court. (*People ex rel. Department of Public Aid v. Santos* (1982), 92 Ill. 2d 120, 125.) "The more reasonable construction [of section 2—619(a)(3)] is that the circuit court possesses some degree of discretion in ruling upon the motion and that multiple actions in different jurisdictions, but arising out of the same operative facts, may be maintained where the circuit court, in a sound exercise of its discretion, determines that both actions should proceed." *A. E. Staley Manufacturing Co. v. Swift & Co.* (1980), 84 Ill. 2d 245, 252-53.

The factors that a court should consider in deciding whether a stay under section 2—619(a)(3) is warranted include: comity; the prevention of multiplicity, vexation, and harassment; the likelihood of obtaining complete relief in the foreign jurisdiction; and the *res judicata* ef-

fect of a foreign judgment in the local forum. (*People ex rel. Department of Public Aid v. Santos* (1982), 92 Ill. 2d 120, 130; *A. E. Staley Manufacturing Co. v. Swift & Co.* (1980), 84 Ill. 2d 245, 254.) Our review of the record in this case shows that the trial judge properly considered the above factors in deciding that a stay was inappropriate, and we find no abuse of discretion.

We note that following the trial court's refusal of defendant's section 2—619(a)(3) motion, the plaintiffs in the Federal case pending in Michigan filed a consolidated complaint. The Federal district court subsequently dismissed the Federal common law claims and referred the remaining claims, based on the Communications Act, to the FCC. (*In re Long Distance Telecommunication Litigation* (E.D. Mich. 1985), 612 F. Supp. 892.) This subsequent action in the Federal court is of no consequence, because all of the reasons that the trial court originally found persuasive in denying the stay are just as applicable, if not more so, now. None of the counts remaining in the Federal action allege common law claims for fraud or breach of contract, or claims based on Illinois' deceptive trade and consumer fraud statutes, but relate only to whether defendant's failure to disclose its charges constitutes a violation of section 201(b) (47 U.S.C. sec. 201(b)) of the Communications Act. The issue of whether defendant's failure to disclose certain charges is "unjust or unreasonable" under section 201(b) of the Communications Act has no relevance as to whether defendant's failure to disclose those charges constituted fraud, a breach of contract, or a violation of Illinois' statutes. While some of the same documentary evidence may be used in both cases, the lawsuits involve entirely different theories and litigation strategies. Thus, considerations of comity, multiplicity and *res judicata* do not persuade us that these actions should be stayed. Moreover, as the trial judge observed, these actions were among the first

449

to be filed in the country, and, consequently, it cannot be argued that the actions were filed with a vexatious purpose or with the intent to harass defendant. Thus, we find that the refusal to grant a stay pursuant to section 2—619(a)(3) was not an abuse of discretion.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE SIMON took no part in the consideration or decision of this case.