**UNIDEN AMERICA CORPORATION,**
**Appellant,**

v.

**TRUNKING ASSOCIATES, a**
**Partnership, Appellee.**

**No. 2–92–147–CV.**

Court of Appeals of Texas,
Fort Worth.

Nov. 6, 1992.

Fulbright & Jaworski, Jonathan B. Skidmore and Jeffrey H. Rasansky, Dallas, W. Wendell Hall, San Antonio, for appellant.

Cantey & Hanger, Mark D. Beatty, Fort Worth, Dale Wootton, Dallas, for appellee.

Before FARRIS, MEYERS and DAY, JJ.

OPINION ON REHEARING

MEYERS, Justice.

This is an interlocutory appeal by Uniden America Corporation, defendant below, from an order granting a temporary injunction sought by Trunking Associates, a Partnership, plaintiff below. The order enjoined appellant to desist and refrain from: a) relocating the six channel SMR station, KNIY 751; and b) removing, or attempting to remove any equipment used to operate the station. In appellant's sole point of error it limited its appeal to the part of the order enjoining it from relocating the station. Yet, it clearly asked this court to vacate and dissolve the temporary injunction. Because of this broad prayer for relief, we interpreted its point of error as arguing that pre-emption from determining the location of the station necessarily includes pre-emption from determining the location of the station's tangible property, the equipment. In our original opinion and

judgment, we reversed, vacated, and dissolved the trial court's temporary injunction in part and affirmed and upheld the temporary injunction in part.

In a motion for rehearing, appellant clarified that it was only appealing the first part of the temporary injunction and was only asking us to partially vacate and dissolve the temporary injunction. Because of this clarification, there is no need for us to distinguish the law of pre-emption as it applies to the location of a station and as it applies to the location of the station's tangible property. For this reason, we grant appellant's motion for rehearing, withdraw our prior opinion and judgment, and only render an opinion as to the first portion of the temporary injunction.

We reverse, vacate, and dissolve the part of the temporary injunction which enjoins appellant from relocating the station.

Appellee initiated this suit in the state trial court based on a contract dispute on November 7, 1991. The contract dispute concerns the property rights to six conventional specialized mobile radio licenses and the equipment of the six channel system. Both are necessary to operate the station located in Euless, Texas. Within a month of the filing of the lawsuit, appellant applied to the Federal Communication Commission (FCC) for permission to relocate the station to Fort Worth, Texas.

The FCC granted appellant's request to relocate on April 8, 1992. At the same time, appellant did not request a Special Temporary Authority ("S.T.A."). An S.T.A. would allow appellant to continue its operations in Euless until the dispute was resolved. Without the S.T.A. appellant may only operate from the Fort Worth location. General Counsel for the FCC, Robert L. Pettit, noted that the S.T.A., if requested, would have been routinely granted.

In an attempt to maintain the status quo during the pendency of its lawsuit, appellee made a motion to the trial court to enjoin appellant from relocating the station and equipment to Fort Worth. In the motion, appellee argued that it, along with its agents and customers, would suffer irreparable harm and damage if appellant transferred the station and equipment. This is because the customers have a contractual relationship with appellee's mobile radio service. Appellee alleges that the customers have no such agreement with appellant. Thus, the customers would no longer be provided with the service for which they contracted if the station and equipment were relocated. Even if appellee wins the lawsuit, its customer base would be destroyed by appellant's transfer of the station and equipment to a new location.

Before the trial court granted this injunction, it granted appellant a partial summary judgment. This judgment ruled "that this Court is pre-empted from making any decision, ruling, and/or finding regarding the return and/or reassignment of the *licenses* made the basis of this lawsuit." [Emphasis added.] On June 19, 1992, the trial court granted the temporary injunction against appellant, ordering that it "desist and refrain from [a)] relocating the six channel SMR station, KNIY 751; [and b)] removing, or attempting to remove any equipment used to operate this station," until the first of either an FCC ruling or a date seven months from April 8, 1992, the date the FCC granted appellant's relocation request.

Appellant's sole point of error is that the trial court abused its discretion by granting this temporary injunction as to the location of the station because its order is pre-empted by the Federal Communications Act of 1934 (the Act), 47 U.S.C.S. §§ 151, 303(d) (Law. Co-op.1981). For the reasons stated below, we hold that the FCC does have exclusive jurisdiction over the location of stations.

█ Our review of an order granting or denying a temporary injunction is strictly limited to determining whether there has been a clear abuse of discretion by the trial court in granting or denying the interlocutory order. *Davis v. Huey,* 571 S.W.2d 859, 861–62 (Tex.1978). The trial court abuses its discretion when the law is misapplied to established facts. *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975).

■ For our holding that the FCC has complete authority with regard to the location of stations under 47 U.S.C.S. §§ 151, 303(d), we begin our analysis with 47 U.S.C.S. § 151. This provision defines the purposes for which the FCC was created.[1] The stated purpose of the Act in section 151 is to make rapid, efficient, nationwide, and worldwide, wire and radio communication service by centralizing authority over this area in the FCC. 47 U.S.C.S. § 151. Under this broad scheme, Congress's intent to occupy the field to the exclusion of state law is apparent. *United States v. Southwestern Cable Co.*, 392 U.S. 157, 173, 88 S.Ct. 1994, 2003, 20 L.Ed.2d 1001, 1013 (1968) (FCC is given comprehensive mandate, with not niggardly but expansive powers). The United States Supreme Court has interpreted the Act as expressing "a desire on the part of Congress to maintain, through appropriate administrative control, a grip on the dynamic aspects of radio transmission." *Federal C.C. v. Pottsville Broadcasting Co.*, 309 U.S. 134, 138, 60 S.Ct. 437, 439, 84 L.Ed. 656, 659 (1940). This interpretation is strengthened by section 154(i) of the Act, which states:

**(i) Duties and powers. The Commission may perform any and all acts, make such rules and regulations, and issue such orders, not inconsistent with this Act, as may be necessary in the execution of its functions.**

47 U.S.C.S. § 154(i) (Law Co-op.1981) (emphasis added).

With the broad scheme of the Act in mind, We turn to section 303. It states:

**Except as otherwise provided in this Act, the Commission from time to time, as public convenience, interest, or necessity requires, shall—**

. . . .

**(d) Determine the location of classes of stations or individual stations.**

47 U.S.C.S. § 303(d) (emphasis added). In this case, when the FCC granted appellant's request to relocate, it was within its power to determine the location of station KNIY 751.

There is no provision in the Act which specifically limits this power. On the other hand, there are no cases interpreting section 303(d) as giving the FCC exclusive jurisdiction over the location of the station. However, the Supreme Court has given us clear guidelines in determining when state regulation is pre-empted by federal law.

When the Supreme Court decided that the Act pre-empts states from cable television regulation, the Court reiterated that state regulation may be pre-empted under several circumstances. *Capital Cities Cable v. Crisp*, 467 U.S. 691, 698–99, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580, 588 (1984). First, pre-emption occurs when Congress, in enacting a federal statute, has expressed a clear intent to pre-empt state law. *Id.* at 699, 104 S.Ct. at 2700, 81 L.Ed.2d at 588. Second, pre-emption occurs when it is clear, despite the absence of explicit pre-emptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has thereby left "no room for the States to supplement" federal law. *Id.* at 699, 104 S.Ct. at 2700, 81 L.Ed.2d at 589. Finally, pre-emption occurs when compliance with both state and federal law is possible or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.*

Congress has left no room for the states to supplement section 303(d). Along with

---

1. It states:

For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States a rapid, efficient, nationwide, and worldwide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, for the purpose of promoting safety of life and property through the use of wire and radio communication, and for the purpose of securing a

more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to interstate and foreign commerce in wire and radio communication, there is hereby created a commission to be known as the "Federal Communications Commission", which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this Act.

47 U.S.C.S. § 151.

the broad mandate of section 151, section 303(d) leaves the power to determine the location of stations solely to the FCC.

Appellee relies on 47 U.S.C.S. § 414 (Law Co-op.1981) to rebut appellant's point of error. This section states:

Nothing in this Act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies.

*Id.* Appellee argues that this section clearly gives states the power to adjudicate contract causes of action and that the injunction in this case is merely the trial court's avenue of implementing its power over this breach of contract claim.

In answer to appellee's arguments, we note that this section is construed as a "savings clause"; it saves state jurisdiction over state causes of action. *Kellerman v. MCI Tel. Corp.,* 112 Ill.2d 428, 98 Ill.Dec. 24, 29, 493 N.E.2d 1045, 1050, *cert. denied,* 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986). For example, because of section 414, pre-emption does not extend to general state statutes prohibiting fraud. *Heastie v. Community Bank,* 690 F.Supp. 716, 720 (N.D.Ill.1988) (citing *Kellerman,* 98 Ill.Dec. at 30, 493 N.E.2d at 1051 (consumer fraud act claim for deceptive advertising not pre-empted by the Act)); *F.E.L. Publications v. National Conference of Catholic Bishops,* 466 F.Supp. 1034, 1046 (N.D.Ill.1978) (alleged infringing activity not within scope of federal law).

In *Kellerman,* the Illinois Supreme Court considered whether the plaintiff's allegations of fraud against a telephone company were pre-empted by the Act. *Kellerman,* 98 Ill.Dec. at 30, 493 N.E.2d at 1051. The court held that the particular state fraud actions before it did not present " 'an obstacle to the accomplishment' of the Federal policy of promoting a 'rapid, efficient ... communication service with adequate facilities at reasonable charges.' " *Id.,* 98 Ill.Dec. at 31, 493 N.E.2d at 1052. There was *no regulation which prohibited the* fraud cause of action. *Id.* Thus, the court held that Congress did not intend to occupy the field in interstate telephone service to

the extent of barring these state law claims for fraud, breach of contract, and deceptive practices; the plaintiff's actions were not pre-empted. *Id.*

■ With section 414 in mind, we must conclude that the same is true for radio services in general. We find no express statutory language or comprehensive legislative scheme which remotely signifies that Congress intended to occupy the field in interstate radio service to the extent of altering or abridging existing common law or state remedies. We hold that Congress did not intend to occupy the field in interstate radio service to the extent of barring state law claims for fraud, breach of contract, and deceptive practices. This holding is consistent with the Supreme Court's holding that the Act does not give the FCC authority to determine the validity of contracts between licensees and others. *Regents of Georgia v. Carroll,* 338 U.S. 586, 602, 70 S.Ct. 370, 379, 94 L.Ed. 363, 375–76 (1950).

Despite this, we cannot say that the trial court's injunction forbidding the relocation of the station in accordance with the FCC's grant does not present an "obstacle to the accomplishment" of the Federal policy of promoting a rapid, efficient, communication service with adequate facilities at reasonable charges. The trial court cannot, even in the interest of preserving the status quo and in the interests of curtailing appellee's damages, determine the location of the station. The FCC has exclusive jurisdiction regarding the location of the station. Any state court interference in this matter would impede rapid, efficient, nationwide, and worldwide radio communication service by decentralizing the FCC's authority.

The trial court misapplied the law of pre-emption to the undisputed fact that appellant was to move the station to Fort Worth in accordance with the FCC's grant. For this reason, we hold that the trial court abused its discretion by issuing an injunction forbidding appellant to relocate the station in accordance with the FCC's order.

We reverse, vacate, and dissolve the portion of the temporary injunction which enjoins appellant from relocating the six

channel SMR station KNIY 751. Therefore, the trial court's temporary injunction is amended as follows:

IT IS THEREFORE, ORDERED that Defendant, Uniden America Corporation, in order to maintain the status quo and in view of the requirements of § 90.155(a), be and hereby is, commanded forthwith to desist and refrain from

removing, or attempting to remove any equipment used to operate this station

from the date of entry of this Temporary Injunction order until and to either an FCC ruling on the pending issues before it or a date seven months from April 8, 1992, which is the date the Federal Communications Commission granted Uniden's request for authorization to relocate the SMR System, whichever occurs first.

Court costs are assessed against appellee.