260

JOHN MANNING *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—93—3647

Opinion filed November 13, 1995.

Ben Barnow and Albert Cueller, both of Barnow & Hefty, P.C., and Larry D. Drury, of Larry D. Drury, Ltd., both of Chicago, for appellants.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Julian N. Henriques, Jr., Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

Terry Rose Saunders and Robert E. Williams, both of Susman, Saunders & Buehler, of Chicago, and Danny E. Adams, James M. Johnstone, and Rachel J. Rothstein, all of Wiley, Rein & Fielding, of Washington, D.C., for appellee Zero Plus Dialing, Inc.

Chester T. Kamin, Patricia Lee Refo, Gregory J. Scandaglia, and John F. Ward, Jr., all of Jenner & Block, of Chicago, for appellees Resurgens Communications Group, Inc., and Telecom*USA.

Daniel P. Albers and Jennifer K. Walter, both of Coffield, Ungaretti & Harris, of Chicago, for appellee Operator Assistance Network, Inc.

John F. Ward, Jr., Michael W. Ward, and Henry T. Kelly, all of O'Keefe, Ashenden, Lyons & Ward, of Chicago, for appellees International Telecharge, Inc., Sheffield Systems, Inc., and The Oxford House.

Stephen L. Agin and Tracy E. Donner, both of Keck, Mahin & Cate, of Chicago, for appellee People's Telephone Co., Inc.

JUSTICE WOLFSON delivered the opinion of the court:

Someone wants to make a long distance call from a telephone in a public place. He or she reaches for the phone. At that moment, the caller does not know which phone service will be handling the call.

The question is whether that caller, claiming confusion and deception, can sue everyone connected with processing the call for injunctive relief and money damages in a State court.

The trial court found there is no claim because Congress preempted the field. We agree.

## BACKGROUND

Before 1982, almost all long distance telephone service in this country was provided by AT&T. The change came in 1982, when the United States and AT&T entered into a consent decree. Among other things, the decree required AT&T to divest itself of its local telephone companies and allow all long distance carriers equal access to local interconnections.

These changes brought competition to the operator service industry. They also brought customer confusion because some opera-

tor service providers did not identify themselves to callers who made operator-assisted calls over certain public phones. At times, consumers could not reach the carrier they wanted. Rates charged by providers were uneven, some much higher than the rates charged by AT&T for interstate calls.

This history is contained in Senate Report No. 439 (S. Rep. No. 439, 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 1577) (Sen. Rep. No. 101—439). To respond to these and other concerns, Congress, in 1990, enacted the Telephone Operator Consumer Services Improvement Act (TOCSIA) (47 U.S.C. § 226 (1991)).

On December 11, 1992, plaintiffs filed a four-count class action complaint charging defendants with fraud and deceptive trade practices in violation of State statutory and common law.

According to the complaint, certain defendants (as well as others not yet named or known), identified as "aggregators," are entities which own, operate, control, maintain, or provide public pay telephones on their premises.

These aggregators contracted with other defendants, known as alternative operator service providers or AOSPs, which are non-Bell phone service companies, to provide operator-assisted (live or automated) phone service for their public phones. The aggregators continued to use Bell telephones, or similar-looking Bell-type telephones, and kept the public telephones in the same or substantially the same locations as when the underlying operator-assistance carrier for the public telephones was AT&T or a Bell operating company (BOC).

In so doing, plaintiffs claim, aggregators were "passing off" AOSP telephones, services, and rates as those of AT&T or Bell operating companies and were thereby creating a misunderstanding or confusion as to the source of the telephone service and the rates charged. According to the complaint, the damage to plaintiffs caused by this "passing off" arose from the fact that AOSPs generally charge higher rates than AT&T or BOCs and the consumer would often be unaware that another carrier had placed the call until the consumer received his/her telephone bill.

Plaintiffs requested temporary and permanent injunctive relief, as well as money damages. In particular, they requested that defendants be enjoined from charging non-BOC rates at BOC-shared or "BOC-type" telephones and that Bell be enjoined from billing or collecting for telephone services on behalf of AOSPs.

In response to the complaint, Telecom*USA and Resurgens Communications Group, Inc. (Resurgens), filed a section 2—619 motion to dismiss the complaint (735 ILCS 5/2—619 (West 1992)), arguing that

the claims were preempted by the Federal Communications Act (47 U.S.C. § 151 *et seq.* (1988)) and the Telephone Operator Consumer Services Improvement Act (TOCSIA) (47 U.S.C. § 226 (1991)).

The City of Chicago (City) responded by filing a section 2—615 motion requesting greater specificity in the complaint. (735 ILCS 5/2—615 (West 1992).) Illinois Bell Telephone Company (Illinois Bell), Operator Assistance Network (OAN), International Telecharge, Inc. (ITI), Sheffield Systems, Inc. (Sheffield), and the Oxford House (Oxford House) all filed section 2—615 motions, seeking dismissal for failure to state a cause of action. Zero Plus Dialing, Inc. (ZPDI), moved for summary judgment.

On July 14, 1993, the trial court held a hearing on the section 2—619 motions, without considering the pending section 2—615 motions or the motion for summary judgment. After hearing argument, the trial court dismissed the complaint with prejudice as to all defendants, finding that the claims were preempted by Federal law.[1]

Plaintiffs moved to vacate the dismissal order and for leave to file an amended complaint. The motions were denied on September 17, 1993, and this appeal followed.

ISSUES

Plaintiffs present two issues:

(1) Whether the State statutory and common law causes of action pled in plaintiffs' complaint are preempted by the Federal Communications Act and the Telephone Operator Consumer Services Improvement Act of 1990 (TOCSIA).

(2) Whether plaintiffs should have been granted leave to amend their complaint.

PREEMPTION

■ Under the supremacy clause of the United States Constitution, State law that interferes with or is contrary to Federal law is

---

[1]The Federal Communications Act and TOCSIA are limited to interstate communications. To the extent that plaintiffs' complaint addresses intrastate communications, defendants argued that the claims were preempted by the Illinois Public Utilities Act. (220 ILCS 5/13—901 (West 1992).) The trial court, however, refused to hear argument on this point, indicating that it was unnecessary. In their opening brief before this court, plaintiffs did not address intrastate communications or the defendants' argument concerning preemption by the Public Utilities Act. For this reason, any argument regarding intrastate communications is waived. See *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 524 N.E.2d 561; 134 Ill. 2d R. 341(e)(7).

preempted. *Schwartzkopf v. National R.R. Passenger Corp.* (1988), 178 Ill. App. 3d 226, 532 N.E.2d 1333.

State action may be invalid even when the State law is not inconsistent with Federal law, if it is in "an area of interstate commerce intended by Congress for exclusive federal regulation." *In re OSPA* (1991), 6 F.C.C.R. 4475.

Congressional intent is the " 'ultimate touchstone' " of any preemption analysis. (*Malone v. American Cyanamid Co.* (1995), 271 Ill. App. 3d 843, 846, 649 N.E.2d 493, quoting *Cipollone v. Liggett Group, Inc.* (1992), 505 U.S. 504, 516, 120 L. Ed. 2d 407, 422, 112 S. Ct. 2608, 2617.) In other words, the "key inquiry" is whether Congress, by enacting a particular statute, "intended it to supplant State laws on the same subject." *Kellerman v. MCI Telecommunications Corp.* (1986), 112 Ill. 2d 428, 438, 493 N.E.2d 1045.

■ Since Congress rarely includes explicit preemptive language in the statute, preemptive intent must often be "divined" by the courts. (*Kellerman*, 112 Ill. 2d at 438.) When divining preemptive intent, courts should consider whether " '[t]he scheme of federal regulation' " or " 'the object sought to be obtained by federal law and the character of obligations imposed' " is so pervasive that it "raises the reasonable inference that Congress left no room for the States to supplement it." (*Kellerman*, 112 Ill. 2d at 438, quoting *Fidelity Savings & Loan Association v. De la Cuesta* (1982), 458 U.S. 141, 153, 73 L. Ed. 2d 664, 675, 102 S. Ct. 3014, 3022.) If so, State regulation is superseded altogether.

> "Even where Congress has not completely displaced state regulation in a specific area, State law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' [citation] or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' ***." *Fidelity Federal Savings & Loan Association*, 458 U.S. at 153, 73 L. Ed. 2d at 675, 102 S. Ct. at 3022.

Applying these basic principles, the *Kellerman* court considered whether the Federal Communications Act (Act) preempted the entire field of long distance telephone service, to the exclusion of State law. The court concluded that State regulation of interstate telephone carriers was not supplanted if it was unrelated to "Congress' objective of creating an interstate telephone network that is rapid, efficient and reasonably priced." (*Kellerman*, 112 Ill. 2d at 440-41.) This conclusion was based on Congress' inclusion of section 414, a saving clause, within the Act.

Section 414 of the Act states:

"Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414 (1988).

In light of this provision, the *Kellerman* court held that "State-law remedies which do not interfere with the Federal government's authority over interstate telephone charges or services, and which do not otherwise conflict with an express provision of the Act, are preserved by section 414 [of the Communications Act]." (*Kellerman*, 112 Ill. 2d at 443.) Because the State law claims involved fraudulent and deceptive advertising about the cost of long distance phone services and did not involve the quality or use of phone services, or the reasonableness of rates, they were held not to be preempted.

Four years after *Kellerman* was decided, Congress enacted TOCSIA. TOCSIA was Congress' response to numerous consumer complaints regarding the deceptive practices of AOSPs. Congress found that "consumers complain that they are denied access to the carrier of their choice, they are deceived about the identity of the carrier providing their operator services and about the rates for the call, they lack information on how they can complain, and they are being deprived of their free choice." (Sen. Rep. No. 101—439, at 1586.) After setting forth an historical overview of the developments in the operator services industry and the complaints by consumers, the Senate concluded that "[t]his legislation will ensure that each consumer is given the information and opportunity to make an informed choice of the desired operator services carrier." Sen. Rep. No. 101—439, at 1581.

The express purpose for the legislation was to "protect consumers who make interstate operator services calls from pay telephones, hotels, and other public locations against unreasonably high rates and anticompetitive practices." (Sen. Rep. No. 101—439, at 1577.) Congress further explained that the goal of the legislation was "to protect consumers from the problems caused by the entrance of these new carriers while avoiding overly stringent regulation that could harm the development of a competitive operator services market." Sen. Rep. No. 101—439, at 1581.

Senate Report No. 101—439 spells out the intent of Congress. The purpose of TOCSIA was to end deceptive practices by telephone service providers and to grant consumers the opportunity to make informed choices regarding telephone services. That, of course, is what this lawsuit is all about.

The method used by Congress to achieve its goal was three-pronged. First, it set minimum standards for OSPs (operator service

providers), requiring them to: (1) immediately identify themselves to the consumer and allow the consumer to terminate the call without incurring any charge; (2) not bill for uncompleted calls; (3) disclose, upon request, its rates, methods of collection, and a number where complaints may be filed, and (4) ensure that aggregators do not "block" consumers from reaching a different operator service carrier. 47 U.S.C. § 226(b)(1) (Supp. 1991).

Second, TOCSIA required aggregators to: (1) post information, on or near the telephone, which identifies the OSP for that phone, informs the consumer of the right to access a different carrier, and lists the number for the consumer affairs division of the Federal Communications Commission (FCC); and (2) provide access to "950" and "800" numbers at cost equal to "0+" calls. 47 U.S.C. § 226(c)(1) (Supp. 1991).

Third, TOCSIA required the FCC to conduct a rulemaking proceeding to "prescribe regulations to—(A) protect consumers from unfair and deceptive practices relating to their use of operator services to place interstate telephone calls; and (B) ensure that consumers have the opportunity to make informed choices in making such calls." (47 U.S.C. § 226(d)(1) (Supp. 1991).) At a minimum, the FCC was to establish a policy for requiring OSPs to publicize the changes in operator services and the choices available to consumers. 47 U.S.C. § 226(d)(4) (Supp. 1991).

TOCSIA, then, represents a broad statement of national policy. It encourages competition while avoiding confusion and deception.

The FCC, which was given the power to promulgate whatever regulations it determined to be necessary for implementing the purpose and policies of the Act, had an opportunity to consider the preemptive reach of TOCSIA when it was called upon to determine the validity of a Tennessee statute. The statute required OSPs whose rates were greater than AT&T's rates to identify themselves, state the cost of their services, and offer to transfer the customer to another carrier without charge.

Invalidating the Tennessee statute, the FCC found that TOCSIA is Congress' "comprehensive legislative solution to any problem in the interstate OSP industry." (*In re OSPA* (1991), 6 F.C.C.R. 4475.) By enacting the Communications Act and TOCSIA, said the FCC, Congress intended that Federal requirements would displace State requirements applicable to interstate operator services. (*In re OSPA*, 6 F.C.C.R. at 4475.) Not only did the Tennessee statute conflict with congressional intent, it also stood "as an obstacle to the achievement of federal objectives." *In re OSPA*, 6 F.C.C.R. at 4476.

Since the FCC was commissioned by Congress to promulgate

regulations to implement the policies and purpose of TOCSIA, its decision in *In re OSPA* should be given considerable weight. We conclude, as the trial court did, that *In re OSPA* provides strong support for the notion that TOCSIA preempts any State action which addresses rates, terms, and conditions of interstate communications services, including deceptive practices of OSPs which contribute to consumer confusion.

■ Whether plaintiffs' cause of action alleged violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.* (West 1994), the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1994)), or common law deceptive practice or fraud, plaintiffs requested injunctive relief "prohibiting the charging of nonBOC rates at BOC-shared or BOC-type telephones" and an injunction prohibiting Illinois Bell from billing or collecting on behalf of AOSPs. Clearly, plaintiffs were seeking to address the rates, terms, and conditions of interstate operator services, although their lawsuit was framed in terms of "passing off."[2] Therefore, the causes of action are preempted.

Plaintiffs contend on appeal that their complaint addressed the deceptive "trade dress" issue, which is distinct from the issues addressed by TOCSIA. Their cause of action, plaintiffs say, deals with the manner in which aggregators and AOSPs use positioning and appearance of public pay phones to confuse and mislead the public into believing that they were continuing to receive Bell or AT&T phone service. They contend their objective is not the "strengthening of defendants' notices, changing of their rates, or modification of their telecommunications practices."

Plaintiffs try to equate this "trade dress" issue with advertising in an attempt to bring this case within the narrow exception recognized in *Kellerman*. Plaintiffs' argument misses the mark. It is clear that the focus of the original complaint is not advertising of services, rates, or promotions. Nowhere in the prayer for relief do

---

[2]Plaintiffs contend on appeal that any effect on rates and service is tangential or tenuous, citing to *Wolens v. American Airlines, Inc.* (1993), 157 Ill. 2d 466, 626 N.E.2d 205. In *Wolens* the Illinois Supreme Court held that a consumer fraud count was not preempted by the Federal Airline Deregulation Act of 1978 (ADA) (49 U.S.C. § 1305 (1988)).

But the United States Supreme Court reversed in *American Airlines, Inc. v. Wolens* (1995), 513 U.S. 219, 130 L. Ed. 2d 715, 115 S. Ct. 817, specifically rejecting the Illinois Supreme Court's reasoning. The Court held that the term "related to rates" within ADA's preemption clause meant *any* effect on rates and did not countenance the separation of "essential" from "unessential" matters.

plaintiffs even mention the physical appearance or location of the public phones.

Even if we were to agree that plaintiffs' objective was to address the "striking physical similarity of the telephones [which] lulls the plaintiffs and consuming public into believing that they are using Bell telephones providing Bell rates and services," the claims would be preempted. Eliminating the public's confusion is the "object sought to be obtained" by Congress by enacting TOCSIA. (*Kellerman*, 112 Ill. 2d at 438.) Allowing State action in this arena would stand as an obstacle to the accomplishment of Congress's goals and objectives because differing local rules regarding operator services would ultimately add to consumer confusion, not diminish it. *Kellerman* does not help the plaintiffs because the claims in that case had nothing to do with the use of the phones. Rather, they were confined to the advertising about the cost of the long distance calls.

The fact that TOCSIA did not set standards regarding the positioning or appearance of public telephones does not mean that these areas are left open to the States. The obligations imposed on aggregators and AOSPs by TOCSIA are deemed sufficient by Congress to accomplish the goal of reducing consumer confusion. See Telephone Operator Consumer Services Improvement Act of 1990, Final Report, November 13, 1992, wherein the FCC concluded:

> "The statutory objectives of TOCSIA are being achieved. Consumers are being protected from unfair and deceptive practices relating to their use of operator services to place interstate telephone calls. Further, consumers have an opportunity to make informed choices in making calls."

It is not for the States to enlarge on the methods employed by Congress. For this reason, we find that State action in this area is preempted by Federal law.

### AMENDMENT OF THE COMPLAINT

■ Plaintiffs also contend that the trial court should have vacated its order dismissing the case and allowed an amended complaint to be filed.

As the trial court found, the amended complaint was nothing more than a cosmetically altered version of the original complaint. It attempted to charge Illinois Bell with a failure to timely advertise the insurgence of AOSPs. But, as stated earlier, the FCC was required to establish a policy whereby AOSPs were to publicize their services. Therefore, plaintiffs' amending of their complaint does not change our finding that the objectives they seek to address are preempted by Federal law.

Based upon our finding that the entire field of operator services is preempted by Federal law, plaintiffs could not have stated a cause of action. Amendment of their claim would have been fruitless.

CONCLUSION

The judgment entered by the trial court is affirmed. Because the finding of preemption disposes of the entire case, we do not reach the other arguments made by some defendants.

Affirmed.

BUCKLEY and BRADEN, JJ., concur.