1-97-0331

March 20, 1998

PHILIPS ELECTRONICS, N.V., and PHILIPS ) 

ELECTRONICS NORTH AMERICA CORPORATION, ) 

d/b/a Advance Transformer Company, ) Appeal from the 

) Circuit Court of 

Plaintiffs-Appellees/Cross-Appellants, ) Cook County

)

v. ) 

) 

NEW HAMPSHIRE INSURANCE COMPANY, )

RELIANCE NATIONAL INSURANCE COMPANY )

(U.K.) LTD., COMMERCIAL UNION ASSURANCE )

PLC, ROYAL INSURANCE PLC, SOREMA (U.K.) )

LTD., ASSICURAZIONI GENERALI S.P.A., ) 

RIVER THAMES INSURANCE COMPANY LTD., )

CHIYODA FIRE & MARINE INSURANCE COMPANY )

(EUROPE) LTD., CONTINENTAL CASUALTY )

COMPANY, ARIG INSURANCE COMPANY LTD., )

THE AETNA CASUALTY & SURETY COMPANY, )

CHUBB INSURANCE COMPANY OF EUROPE S.A. )

and A. SHARP (On His Own Behalf and On )

Behalf of Each Member of Syndicate )

839), )

)

Defendants-Appellants/Cross-Appellees, )

)

and )

) Honorable

NATIONAL UNION FIRE INSURANCE COMPANY ) John Gustafson,

OF PITTSBURGH, PA., ) Judge Presiding.

) 

Defendant. ) 

JUSTICE HARTMAN delivered the opinion of the court:

Defendants, collectively referred to as Insurers, brought an action in the Commercial Court of the High Court of Justice, Queen's Bench Division, in London, England (Commercial Court), seeking a declaration that they owe no coverage under their fidelity insurance policies for losses claimed by their insured, plaintiff Philips Electronics North America Corporation (PENAC).  PENAC unsuccessfully challenged the Commercial Court's jurisdiction over the declaratory judgment proceedings.  

While a preliminary appeal in the Commercial Court action was pending in the English Court of Appeal, PENAC and its parent corporation, Philips Electronics, N.V. (Philips) (sometimes collectively plaintiffs) brought this suit in the circuit court.  Insurers moved to dismiss or stay pursuant to section 2-619(a)(3) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(3) (West 1994)) (section 2-619(a)(3)), pending the outcome of the Commercial Court case.  

Philips is a Netherlands corporation with its principal place of business in Eindhoven, Netherlands.  PENAC, a wholly-owned subsidiary of Philips, is a Delaware corporation with its principal place of business in New York.  PENAC is authorized to do business in Illinois, where it operates under the name of Advance Transformer Company (Advance), an unincorporated division of PENAC.  Advance manufactures electronic equipment, including magnetic and electronic ballasts.

Philips contracted with Insurers to purchase a Comprehensive Crime Policy consisting of primary, excess, and deductible policies (fidelity policies), which would provide plaintiffs with coverage for the period between December 31, 1993 and December 31, 1994.  An English broker negotiated the contract on behalf of Philips and PENAC.  Two Insurers entered into the contract in the United States, where they are domiciled; the eleven remaining Insurers entered into the contract in London.

Most of the 13 Insurers have limited ties to Illinois.  Only one, Continental Casualty Company, is incorporated in Illinois and has its principal place of business in Chicago.  Seven others are incorporated in England; the remainder are incorporated elsewhere in the United States, or in Italy or Belgium.  The principal place of business for five Insurers is in England; the others keep their principal place of business in Connecticut, New York, Pennsylvania,  Belgium, Italy, Netherlands, and Pakistan.  Defendant A. Sharp is an underwriter for Lloyd's of London, who participated in the policies on behalf of the members of Lloyd's Syndicate No. 839.  Eleven of the 13 Insurers operate in the London insurance market.  A large portion of the fidelity policies were written by Insurers who were based in the United States, or were English subsidiaries of American insurers, who also provided most of the coverage for the fidelity policies.

The fidelity policies indemnified plaintiffs for losses resulting from fraudulent or dishonest acts committed by an employee.  To qualify for coverage, the employee must have possessed, 

"the manifest intent:  

(a) to cause the Insured to sustain such loss; and

(b) to obtain financial benefit for the Employee, or for any other person or organisation intended by the Employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment."

A choice of law provision stated that the "construction, interpretation and the meaning of the terms, exclusions, limitations and conditions of this Policy shall be determined in accordance with" English
(footnote: 1) law.

In November and December of 1994, plaintiffs notified Insurers of two potential losses, for which it planned to seek coverage, stemming from activities occurring at Advance.  In their proof of loss, plaintiffs stated that Theodore A. Filson joined Advance in 1986 as Vice President of Operations, and became president in 1989.  Plaintiffs claimed that in February 1992 Filson, his wife, and other Advance employees and their wives formed a fraudulent travel agency, through which they embezzled funds from Advance.  By April 1992, Filson knew that the design of the electronic ballasts Advance manufactured contained an inherent flaw, and all of the ballasts were defective, yet he continued to ship the ballasts.  Plaintiffs believe Filson wanted to preserve or increase the division's performance, so that he could retain his position and earn his bonus, and continue to embezzle money without PENAC or Philips investigating Advance's operations.   

Plaintiffs asked Filson to resign in November 1993, and in May 1994 they hired outside investigators to determine the losses suffered at Advance.  After notifying the London office of one Insurer of its losses, Philips arranged a meeting in London with a claims manager to discuss its claims for coverage.  On March 21, 1995, PENAC sued several former Advance employees and their wives in federal court in the Northern District of Illinois, stating claims for fraud and deceit, constructive fraud, conversion, theft and embezzlement, civil conspiracy, breach of fiduciary duty and aiding and abetting.

The fidelity policies required the insured to submit a claim for coverage (proof of loss) within six months after discovering the loss unless the parties agreed to extend the period.  An insured may not sue on the policies until 90 days after filing a proof of loss, but must file suit within two years of discovering the loss.  Insurers granted plaintiffs several extensions in filing the proof of loss, which initially was due in May 1995.

Philips submitted its proof of loss on behalf of PENAC to the London offices of Insurers on August 31, 1995, claiming losses for at least $28 million as of December 31, 1994, resulting from the embezzlement, replacement of the defective ballasts, bonuses paid to Filson, and investigation fees.  Philips also claimed a total potential loss of more than $100 million, which included the projected future costs of replacing all the defective ballasts shipped by Filson.  The proof of loss consisted of more than 200 exhibits, a lengthy narrative prepared by Philips explaining the results of its investigation, and a preprinted loss form stating that the loss was a direct result of employee dishonesty.  Philips agreed to make other documents available to Insurers, but did not include it with the Proof of Loss because the size of the documentation was "too voluminous" to attach.

Philips reserved the right to amend or supplement the proof of loss as it continued to investigate and as its losses continued to mount.  Philips further stated that "
The information contained herein is confidential
 and is not to be used *** for any other purpose.  The release of this Information to others without our express consent will be considered a breach of your fiduciary and contractual obligations under the policy." (Emphasis in original)

Insurers hired Edward Davies, who was based in London, to serve as a claims adjuster.  At a June 1995 meeting, Davies informed plaintiffs that the fidelity policies did not appear to cover losses resulting from the bonuses and defective products.  Plaintiffs' attorney asked Insurers to attempt to find a business solution as an alternative to initiating litigation over the claim, expressing concern that Insurers "will go straight to litigation on this matter." 

Davies met with plaintiffs' investigators in Chicago in October 1995.  Davies also interviewed former Advance employees, including those being sued by Philips in federal court, and who would not permit plaintiffs to be present at the interviews.  He had scheduled interviews with some of Advance's current employees for December 1995. 

On November 29, 1995, one day before the end of the 90-day limitations period, after which plaintiffs could sue on the policies, Insurers initiated declaratory proceedings against PENAC in the Commercial Court.  Insurers obtained leave of the court to serve PENAC with a writ of summons outside the English jurisdiction.  The writ contained a written statement of Insurers' claim against plaintiffs, in which they sought a declaration that they owed no duty to indemnify PENAC under the policies for losses resulting from the bonus fraud, defective ballasts, and investigation fees.

In response, PENAC sought to have a summons issue, requesting that the Commercial Court discharge its previous order and set aside the writ of summons.  PENAC argued that Insurers failed to "disclose a reasonable cause of action;" another forum possessed competent jurisdiction and was the appropriate forum for litigation of the dispute; and Insurers had engaged in inappropriate forum shopping, or its claim was otherwise an inappropriate action for declaratory relief.  PENAC also accused Insurers of acting in bad faith, but subsequently indicated to the Commercial Court that its bad faith claims were not material to the jurisdictional issue before the court.

On April 27, 1996, the Commercial Court issued a written opinion denying PENAC's summons, in which it presumed the truth of the allegations contained in the proof of loss, stating that the issue was whether those allegations supported a claim for coverage under the fidelity policies.  The court explained that if these underlying facts needed to be litigated, England would not be the appropriate forum because the facts and witnesses were located in Illinois.  In deciding that it possessed jurisdiction over the action, the court found that "England is clearly the appropriate forum where this claim, to the trial of threshold issues of law or assumed facts, can be heard suitably for the interests of the parties and the end of justice."

PENAC sought interlocutory leave to appeal the Commercial Court's decision, which the Court of Appeal granted on June 19, 1996.  On May 17, 1996, after the Commercial Court issued its opinion, but before the Court of Appeal granted leave to appeal, plaintiffs filed the instant action in the circuit court.  Count I of plaintiffs' five-count amended complaint asserted a claim for breach of contract.  Counts II and III alleged that Insurers breached the duty of good faith and fair dealing by providing plaintiffs' former employees at Advance with copies of its proof of loss, despite plaintiffs' repeated requests that the information contained in the proof of loss be kept confidential; and filing a peremptory claim against PENAC in England.  Both counts alleged the same measure of damages as in count I.  Count IV asserted a violation of the Illinois Insurance Code (215 ILCS 5/155 (West 1994)), alleging that Insurers unreasonably refused to indemnify plaintiffs for their losses.  The fifth count is directed against National Union Fire Insurance Company of Pittsburgh, PA (National Union), pursuant to a general liability policy.  National Union is not involved in the English proceeding and is not a party to this appeal. 

Insurers moved to dismiss counts I through IV pursuant to Rule 2-619(a)(3), arguing that the English action constituted "another action pending between the same parties for the same cause."  Alternatively, Insurers moved to stay the adjudication of those counts pending the resolution of the English proceeding.  The circuit court denied the motion to dismiss any of the counts and to stay counts II and III of the amended complaint, but granted the motion to stay counts I and IV of the amended complaint.  Both plaintiffs and Insurers appeal.
(footnote: 2)
The circuit court may stay proceedings as part of its inherent authority to control the disposition of cases before it.  
Disciplined Investment Advisors v. Schweihs
, 272 Ill. App. 3d 681, 692, 650 N.E.2d 578 (1995).  The court may consider factors such as the orderly administration of justice and judicial economy in determining whether to stay proceedings.  

The standard of review of the circuit court's decision granting a motion to stay is limited to a determination of whether the court abused its discretion.  
Disciplined
, 272 Ill. App. 3d at 692.  
For reasons which follow, we affirm.

I

Initially, plaintiffs argue that section 2-619(a)(3) does not apply to pending actions in foreign courts.  Section 2-619(a)(3) allows a defendant to move for dismissal or "other appropriate relief" if "there is another action pending between the same parties for the same cause."  735 ILCS 5/2-619(a)(3) (West 1994).  This provision grants a right to dismiss regardless of the jurisdiction in which the other action was pending.  
Skolnick v. Martin
, 32 Ill. 2d 55, 59, 203 N.E.2d 428 (1964).  Application of section 2-619(a)(3) also encourages "the elimination of repetitious suits and the relief of courts and litigants alike from the unnecessary burden of trying the same issues pending in another action."  
  
Skolnick
, 32 Ill. 2d at 59.

Three Illinois cases have held that the mere existence of a pending action in a foreign court does not require dismissal of litigation of identical causes of action in Illinois courts.  
Dayan v. McDonald's Corp.
, 64 Ill. App. 3d 984, 987, 382 N.E.2d 55 (1978); 
Goldberg v. Goldberg
, 27 Ill. App. 3d 94, 98, 327 N.E.2d 299 (1975); 
Farah v. Farah
, 25 Ill. App. 3d 481, 493, 323 N.E.2d 361 (1975).  In 
Goldberg
 and 
Farah
, the courts affirmed the denial of defendants' motions to dismiss their divorce proceedings on the basis of pending divorce actions in foreign countries.  
Goldberg
, 27 Ill. App. 3d at 98; 
Farah
, 25 Ill. App. 3d at 493.  Relying on 
Goldberg
 and 
Farah
, the 
Dayan
 court affirmed the grant of a preliminary injunction in plaintiff's favor, despite the existence of a pending breach of contract suit filed by defendant in France.  
Dayan
, 64 Ill. App. 3d at 987.

Two federal decisions recently questioned the continued vitality of 
Goldberg
, 
Farah
, 
and 
Dayan
.  
Ball v. Deere & Co.
, 684 F. Supp. 1455, 1457 (C.D. Ill. 1988); 
Northbrook Property and Casualty Insurance Co. v. Allendale Mutual Insurance Co.
, 887 F. Supp. 173, 175 (N.D. Ill. 1995).  In 
Ball
, the court stated that those decisions preceded the enactment of the Uniform Foreign Money-Judgments Recognition Act (735 ILCS 5/12-618 
et
 
seq
. (West 1994)) (UFMJRA), which provides that with certain exceptions, a foreign judgment is conclusive and enforceable "in the same manner as the judgment of a sister state which is entitled to full faith and credit."  735 ILCS 5/12-620 (West 1994).  Plaintiffs in the present case correctly point out that, contrary to the 
Ball
 court's assertion, UFMJRA was enacted long before 
Farah
 was decided.  1963 Ill. Laws 1506 (sec. 1).  After the court issued its decision in 
Farah
, the statute was recodified, but its language was not significantly amended.  See Ill Rev. Stat. 1983, ch. 110, par. 12-618 
et
 
seq
.

An exception set forth in UFMJRA distinguishes 
Farah
 and 
Goldberg
 from the present case on different grounds, specifically excluding "a judgment for support in matrimonial or family matters" from its definition of the term "foreign judgment."  That portion of the statute remains unchanged.  See 735 ILCS 5/12-618 (West 1994).  A judgment by a foreign court  entered in conjunction with a divorce decree, then, is not enforceable in Illinois courts.  
Nardi v. Segal
, 90 Ill. App. 2d 432, 437, 234 N.E.2d 805 (1967).

The courts in 
Goldberg
 and 
Farah
 were not required to recognize any judgment entered in divorce proceedings by a foreign court, and therefore did not err in refusing to dismiss cases based upon pending proceedings in foreign jurisdictions.  This element differentiates those two cases from the present case, as well as from 
Dayan
, which was not a divorce action.  

The 
Dayan
 decision relied for its holding on 
Pesquera del Pacifico S. de R.L. v. Superior Court in and for San Diego County
, 89 Cal. App. 2d 738, 201 P.2d 553 (1949), also cited in 
Farah
 and 
Goldberg
, which upheld the denial of a stay pending the resolution of a foreign action.  The 
Pesquera
 case was decided before the 1967 California enactment of UFMJRA.  
Cal. Civ. Proc. Code sec. 1713-1713.8 (West 1994).  The concerns expressed by the 
Pesquera
 court were addressed in UFMJRA, which contains language protecting parties from the recognition of unjust judgments by providing that a foreign judgment will be considered inconclusive if the tribunal issuing the judgment was not impartial; the procedures of the tribunal were incompatible with principles of due process of law; or the foreign court lacked jurisdiction over the subject matter or the parties (735 ILCS 5/12-621(a) (West 1994)), in addition to a list of defenses to the recognition of a foreign judgment.  See 735 ILCS 5/12-621(b)(1)-(6) (West 1994).

Plaintiffs argue that UFMJRA does not apply here because the judgment being sought in the English court is not a "foreign judgment" as it is defined in the statute.  UFMJRA defines a "foreign judgment" as "any judgment of a foreign State granting or denying recovery of a sum of money," with some exceptions that do not apply here.  735 ILCS 5/12-618(b) (West 1994).  Here, Insurers are seeking to prevent plaintiffs from recovering a sum of money, namely the proceeds of the fidelity policies; if they succeed, the judgment would deny them such a recovery.  A future judgment of the English court involving these parties therefore would qualify as a foreign judgment under UFMJRA, and would be enforceable in the circuit court.  Where the language of a statute is certain and unambiguous, courts must enforce the laws as enacted by the legislature.  We may not depart from the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed legislative intent.  
In re Marriage of DeRossett
, 173 Ill. 2d 416, 420, 671 N.E.2d 654 (1996).

Even if UFMJRA did not apply to a judgment entered by the English court, in this case, the Act's savings provision would allow recognition of the decree under principles of comity.  See 
Basic v. Fitzroy Engineering, Ltd.
, 949 F. Supp. 1333, 1340 (N.D. Ill. 1996); 
Banco de Vizcaya, S.A. v. First National Bank of Chicago
, 514 F. Supp. 1280, 1286 (N.D. Ill. 1981).  Comity is not a rule of law, but one of practice, convenience, and expediency.  
Mayekawa Manufacturing Co., Ltd. v. Sasaki
, 76 Wash. App. 791, 799, 888 P.2d 183, 188 (Wash. App. 1995), citing 
Somportex Ltd. v. Philadelphia Chewing Co.
, 453 F.2d 435, 440 (11th Cir. 1971), 
cert
. 
denied
, 405 U.S. 1017, 31 L. Ed. 2d 479, 92 S. Ct. 1294 (1972).  "Comity should be only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect."  
Basic
, 949 F. Supp. at 1340, quoting 
Somportex
, 453 F. 2d at 440.

The judgment of a foreign court is recognizable under UFMJRA or principles of comity, as shown above, and the circuit court properly considered whether to stay or dismiss plaintiffs' complaint because of the pending action in the English court.

II

Section 2-619(a)(3) allows for dismissal or other appropriate relief only if the other pending action involves the "same parties" and the "same cause".  735 ILCS 5/2-619(a)(3) (West 1994).  Plaintiffs claim the "same parties" requirement was not met here because Insurers failed to name Philips as a party to the English action, choosing to file suit against PENAC, Philips' subsidiary, and because National Union, a defendant in the instant action, is not a party to the English action.  Plaintiffs further contend that the "same cause" prerequisite was not satisfied because the English action is based solely upon the proof of loss, but the instant action involves facts and allegations outside the proof of loss.  Alternatively, plaintiffs argue that even if the two suits meet the basic requirements for section 2-619(a)(3), the connection between the underlying facts and the state of Illinois nonetheless operate in favor of allowing the parties to proceed in an Illinois court on all four counts.

A

Section 2-619(a)(3) does not require that parties be identical in both actions; a substantial similarity is sufficient.  
People ex rel. Phillips Petroleum Co. v. Gitchoff
, 65 Ill. 2d 249, 255, 357 N.E.2d 534 (1976) (
Gitchoff
); 
Cummings v. Iron Hustler Corp.
, 118 Ill. App. 3d 327, 332, 454 N.E.2d 1078 (1983) (
Cummings
)
.  Privity between the parties in both actions may be result in sufficient similarity in interest to be considered the "same parties."  
Cummings
, 
118 Ill. App. 3d at 333.  I
n 
Aetna Casualty & Surety Co. v. Kerr-McGee Chemical Corp.
, 875 F.2d 1252, 1256 (7th Cir. 1989),  for example, the same parties requirement was satisfied, although in one of the actions the subsidiaries, not their corporate parent, were named as parties.  The court found that the interests of these parties were "sufficiently congruent" to satisfy section 2-619(a)(3).  
Aetna
, 875 F.2d at 1257.  

In the instant action, Philips and its subsidiary, PENAC, brought suit to recover damages suffered by PENAC.  Insurers named only PENAC as a defendant in the English proceedings.  Because of the relationship between Philips and PENAC, and their corresponding interests in the two cases, the named parties to the two actions are substantially similar and qualify as the same parties under section 2-619(a)(3).

The fact that National Union was not named in the English proceedings does not render the parties different for purposes of section 2-619(a)(3).  To that end, the case cited by plaintiffs, 
Zurich Insurance Co. v. Baxter International, Inc.
, 173 Ill. 2d 235, 670 N.E.2d 664 (1996), is distinguishable from the present case.  There, the parties to the pending foreign action consisted of a corporation and two of its insurers, notwithstanding the facts that the Illinois action named more than 100 of the corporation's excess insurers and dozens of tort claimants from the underlying tort actions.  
Zurich
, 173 Ill. 2d at 246.  In this case, only one of fourteen insurers, National Union, was not named in the England proceeding.  Plaintiffs' claim against National Union involves different legal and factual issues, is separate from the claims against Insurers, and is not even part of this appeal.  The remaining parties to the two actions are substantially similar and qualify as the "same parties" under section 2-619(a)(3).

B

The same cause requirement similarly mandates only substantially similar, not necessarily identical, causes of action.  
Gitchoff
, 65 Ill. 2d at 255; 
Cummings
, 118 Ill. App. 3d at 332.  To be considered is whether the two actions arose out of the same transaction or occurrence, rather than whether the legal theory, issues, burden of proof, or relief sought materially differ between the two actions.  
Quantum Chemical Corp. v. Hartford Steam Boiler Inspection & Insurance Co.
, 246 Ill. App. 3d 557, 560, 616 N.E.2d 686 (1993); 
Catalano v. Aetna Casualty & Insurance Co. of Illinois
, 105 Ill. App. 3d 195, 198, 434 N.E.2d 31 (1982).  The central inquiry, then, is whether the relief requested rests on substantially the same facts.  
Bank of Northern Illinois v. Nugent
, 223 Ill. App. 3d 1, 14, 584 N.E.2d 948 (1991); 
Continental Grain Co. v. FMC Corp.
, 27 Ill. App. 3d 819, 825, 327 N.E.2d 371 (1975).

In the present case, Insurers filed suit in the English Commercial Court, postulating that the fidelity policies did not cover the losses PENAC suffered from the defective ballasts, travel agency fraud, and investigation fees.  Plaintiffs filed the instant action, of which four counts are directed against Insurers.  Counts I and IV raise the same core issues as the Commercial Court action:  essentially, whether Insurers must indemnify plaintiffs pursuant to the fidelity policies.  In addition, both the Commercial Court action, and counts I and IV in the instant action, arose out of the same transaction or occurrence, namely, the losses incurred by plaintiffs as a result of the alleged commission of fraudulent activities by Advance employees. 

Counts II and III, however, involve facts different from those in the Commercial Court action, are not part of the policy coverage issue, and do not arise from the same transaction or occurrence.  For instance, count II alleges that Insurers breached a fiduciary duty to plaintiffs by revealing confidential information about them to former Advance employees being sued by plaintiffs.  Count III alleges that a similar breach occurred when Insurers filed the Commercial Court action.  These allegations do not require proof of facts that involve interpretation of the terms and scope of the fidelity policies, which is the essence of the English action; instead, they focus on the relationship between Insurers and plaintiffs, and scope of the duty that Insurers owed plaintiffs.  The alleged injuries suffered by plaintiffs, as claimed in counts II and III, do not stem from the coverage dispute, but instead occurred later as a result of actions subsequently taken by Insurers.  Accordingly, they did not arise from the same transaction or occurrence as the Commercial Court action and cannot be considered the same cause.  

Insurers assert that any claim against them for bad faith cannot be resolved until the coverage issue is decided and an insured cannot recover on such a claim under the Insurance Code where the insurer rightfully denies coverage.  
McDaniel v. Glens Falls Indemnity Co.
, 333 Ill. App. 596, 602, 78 N.E.2d 111 (1948); 
Hermitage Insurance Co. v. Action Marine, Inc.
, 816 F. Supp. 1280, 1286 (N.D. Ill. 1993).  Counts II and III do not allege bad faith in denying coverage, however.  Plaintiffs instead claim in those counts that Insurers breached their fiduciary duty by allowing confidential information to become a matter of public record during their investigation of plaintiff's claim for coverage, and by filing a preemptive lawsuit.  These claims are not dependent upon the coverage issue and do not require interpretation of the terms of the fidelity policies.  

C

Plaintiffs argue that even if the "same parties" and "same cause" requirements of section 2-619(a)(3) were met, the circuit court should have refused to stay all four counts because of the substantial connections between this litigation and the State.  Multiple actions brought in different jurisdictions, but arising out of the same operative facts, may be maintained if the circuit court, in exercising its discretion, determines that both suits should proceed.  
Kellerman v. MCI Telecommunications Corp.
, 112 Ill. 2d 428, 447, 493 N.E.2d 1045 (1986); 
A.E. Staley Manufacturing Co. v. Swift & Co.
, 84 Ill. 2d 245, 253, 419 N.E.2d 23 (1980).  The following factors should be considered in deciding whether a stay is warranted under section 2-619(a)(3):  comity; the prevention of multiplicity, vexation, and harassment; the likelihood of obtaining complete relief in the foreign jurisdiction; and the 
res
 
judicata
 effect of a foreign judgment in the local forum.  
Zurich
, 173 Ill. 2d at 244; 
Kellerman
, 112 Ill. 2d at 447-48.

In the instant case, only one of the 13 Insurers, and none of the plaintiffs, are either headquartered or have their principal place of business in Illinois.  Further, the parties had minimal contact with Illinois during the preparation of the fidelity policies, choosing to use American and English brokers and underwriters who were located in other states and in London.  All but two Insurers executed the policy agreement in London.  Although the underlying claim on which coverage is asserted involves events that took place in Illinois, most of the events leading to the execution of the fidelity policies, and to the coverage dispute after Philips filed notice of its claim, took place in other parts of the United States and England. 

Plaintiffs emphasize the American and, specifically, Illinois connections to this litigation, but evidence in the record reveals that plaintiffs themselves submitted both their notice of a claim for coverage and the proof of loss to the London offices of one of the Insurers; an English claims adjuster, Davies, who was based in London, was hired by Insurers; and most of the discussions between plaintiffs and Insurers over their claim took place at various locations in England, with the exception of Davies' October 1995 visit to Chicago.  

Most importantly, the terms of the policies expressly provided that English law would govern interpretation of the agreement.  Choice of law provisions may be enforced in this state.  
Swanberg v. Mutual Benefit Life Insurance Co.
, 79 Ill. App. 3d 81, 85, 398 N.E.2d 299 (1979).  Plaintiffs argue that the circuit court could interpret and apply relevant English laws just as capably as the Commercial Court.  The cases cited by plaintiff in support of this argument, however, do not involve section 2-619(a)(3) motions.  
In re Estate of Janussek
, 281 Ill. App. 3d 233, 666 N.E.2d 774 (1996); 
Atwood Vacuum Machine Co. v. Continental Casualty Co. of Chicago
, 107 Ill. App. 2d 248, 246 N.E.2d 882 (1969).  

Several factors here make it more appropriate for an English court to adjudicate the coverage claim and interpret its own laws.  One potential issue relating to coverage is whether the acts allegedly committed by Filson evidenced "manifest intent" as the term is used in the fidelity policies.  The parties acknowledge that the question of how to construe the term is an issue of first impression in England; that issue remains the subject of intense debate among courts in our own country.  See 
First National Bank of Louisville v. Lustig
, 96 F.3d 1554, 1566 (5th Cir. 1996); 
Susquehema BancShores v. National Union Fire Insurance Co.
, 442 Pa. Super. 281, 287-94, 659 A.2d 991, 994-97 (1995).  In light of these circumstances, it would be difficult to predict how an English court would decide that issue as a matter of English law.   

Plaintiffs claim that they wish to assert an additional basis for coverage that was not discussed in the proof of loss, and therefore will not be considered by the English court, preventing them from obtaining complete relief; however, plaintiffs specifically reserved the right to amend their proof of loss at any time when they first submitted it to Insurers.  No reason appears as to why the Commercial Court would not allow them to submit additional information and evidence, or assert additional bases for coverage, during litigation of the declaratory judgment action.  

Plaintiffs further contend that their amended complaint in the circuit court raises additional allegations relating to the issue of whether Filson possessed the requisite "manifest intent" when he committed the dishonest acts.  Plaintiffs argue that these allegations are supported by evidence located in Illinois, and must be resolved in an Illinois court.  For purposes of the Commercial Court action, however, plaintiffs' allegations will be presumed to be true.  The issue in the Commercial Court is whether the allegations in the proof of loss state a claim for coverage under the fidelity policies.  Plaintiffs would not be required to prove those allegations in the Commercial Court.  

To allow multiple litigation of the same issue in two different courts would place an unnecessary judicial burden on our system.  Plaintiffs did not show that they would be unable to introduce additional allegations in the Commercial Court action, so as to be deprived of the opportunity to fully litigate the coverage issue.  

For the foregoing reasons, the circuit court's order granting a stay with respect to counts I and IV of plaintiffs' amended complaint, and denying the stay with respect to counts II and III, is affirmed.

Affirmed.

HOFFMAN and HOURIHANE, JJ., concur.

FOOTNOTES
1:
Although one of the policies mentions "United Kingdom" law, the parties agree that this is a reference to English law.  The Commercial Court also recognized that the reference to United Kingdom law should be interpreted as a reference to English law.

2:
On May 1, 1997, plaintiffs filed a motion in this court to supplement the record with the "Skeleton Argument to the English Court of Appeal."  This court agreed to take the motion with the case.  In its objection to this motion, the Fidelity Insurers pointed out that the English Court of Appeal has since affirmed the Commercial Court's decision and dismissed the appeal.  The parties chose not to supplement the record with the appellate court's decision, however.