**PRAXAIR, INC., Plaintiff,**

v.

**Alfred SLIFKA and Global Petroleum Corp., Defendant.**

**No. 98 C 7270.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 6, 1999.

Order Vacating Dismissal,
Aug. 19, 1999.

John T. Schriver, Elizabeth Brooke Herrington, McDermott, Will & Emery, Chicago, IL, for defendants.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

This action for fraud under the laws of Illinois arises from damage allegedly suffered by CBI Industries, Inc. (CBI) due to its business dealings with Alfred Slifka. For the reasons stated herein, the complaint is dismissed.

## BACKGROUND

Praxair, Inc. (Praxair), a Delaware corporation headquartered in Connecticut, is engaged in the business of manufacturing and selling medical and specialty gases to customers located throughout the United States. Between January and March 1996, Praxair acquired all of the outstanding common stock of CBI Industries, Inc. (CBI), a Delaware corporation headquartered in Oak Brook, Illinois. Statia Terminals, Inc. (Statia Terminals) was a subsidiary of CBI. This action arises from Statia Terminals' business relationship with defendant Alfred Slifka (Slifka), a Massachusetts resident who is the president and 50% shareholder of co-defendant Global Petroleum Corporation (Global), a privately-held Massachusetts corporation headquartered in that state and engaged in the business of distributing gasoline.

Early in 1992 Global approached Statia Terminals and proposed that the two companies engage in a joint project to refurbish the Point Tupper Terminal Facility (the terminal facility), a dormant petrochemical storage facility located in Point Tupper, Nova Scotia, Canada, then owned by a Canadian corporation, Point Tupper Properties Limited (PTPL). Statia Terminals agreed and, pursuant to a stock purchase and shareholder agreement (the shareholder agreement) Statia Point Tupper Corporation (Statia's acquiring corporation), with financing from

Nathan P. Eimer, Nancy Anne Temple, Jeffrey Charles Sharer, Sidley & Austin, Chicago, IL, for plaintiff.

CBI, purchased a 24.5% share in PTPL. Also pursuant to the shareholder agreement, Slifka arranged for the purchase of 24.5% ownership of PTPL by Tupper Associates Limited Partnership (Tupper Associates), a Massachusetts limited partnership formed to serve as Global's acquiring corporation. Pursuant to the shareholder agreement, the remaining 51% was purchased by a third party, Point Tupper Ventures Ltd. The shareholder agreement provided that a Canadian corporation, Point Tupper Terminals Company (PTTC), would manage the terminal facility and each of the three shareholders was entitled to appoint one representative to PTTC's shareholder committee (the committee). Although Slifka was not a named representative to the committee, Praxair maintains that he attended several of the scheduled meetings.

After the parties entered the shareholder agreement, Global agreed to lease at least one million barrels of gasoline tankage at the terminal facility for at least two years at 25 cents (Canadian) per barrel per month (the throughput agreement). This agreement is evidenced by a letter Slifka sent to the Nova Scotia Business Development Authority on October 1, 1992 (Mem.Exh.A). Praxair maintains that by January 1993, Global had agreed to lease at least 1,340,000 barrels at 27.5 cents (U.S.) per barrel per month, although there is no documentary evidence to that effect. By January 1993, it was clear that additional financing was needed to refurbish the facility, and such financing was discussed at the shareholders' committee meeting held on January 29, 1993, at CBI's Illinois office. Slifka and other Global officers attended. At that meeting, CBI was asked to guarantee a loan from the Bank

of Montreal in the amount of $35.7 million (U.S.) and George Schueppert (Schueppert), CBI's executive vice-president and chief financial officer, agreed on CBI's behalf. CBI executed a guaranty agreement on March 30, 1993, and the Bank of Montreal loaned the amount (which was later increased to $50 million (U.S.)) to PTTC.

Praxair next maintains that in May or June of 1993, Slifka telephoned Schueppert at CBI's Illinois office to ask CBI to purchase Slifka's interest in the terminal facility. Slifka went to Illinois to discuss the buyout with CBI's management including Schueppert and John Jones, the Chairman and CEO of CBI. In addition, Slifka and CBI's management discussed the matter by telephone on several occasions. Such calls were initiated by both parties. On October 20, 1993, Statia Point Tupper Corporation purchased Slifka's interest for $5 million. On October 29, 1993, Global declared that it would not fulfill its agreement to lease space at the terminal facility.

In December 1993, Global sued PTTC in the Supreme Court of Nova Scotia, claiming that it had been damaged by PTTC's actions (the first Canadian action) on two contracts that are entirely separate from this case [1] (Cplt.Exh A.,Carmichael aff.). In that action, PTTC filed a counterclaim against Global, seeking to recover damages from Global's refusal to comply with the throughput agreement discussed above (cplt., exh.B, defence and counterclaim). In April 1996, Global filed a second action in the Supreme Court of Nova Scotia (the second Canadian action), naming as defendants CBI, Statia Terminals, Statia Terminal Point Tupper and Statia Point Tupper Corporation. In the complaint, Global gives a somewhat different view of the events described above. Specifically, Global alleges that, working in conjunction

---

1. According to the complaint in the first Canadian action, PTTC and Global entered into a contract on September 1, 1993, in which PTTC agreed to provide tankage in which Global could store heating fuel for 90 days. Global claims that PTTC breached this contract when it refused to release the stored fuel

after the ninety days expired. In addition, Global claims that PTTC and Global agreed that Global could use the terminal facility for blending gasoline blendstocks (the "Blending Facilities Agreements"). In the first Canadian action, Global alleges that PTTC also breached these contracts.

with a Canadian company, Scotia Synfuels Limited (Synfeuls), also a plaintiff in the second Canadian action, it found the terminal facility investment opportunity and, upon deciding they needed another investor, approached Statia Terminals in the fall of 1991. Statia agreed, and in exchange for its participation received half of Global's interest in PTTC. When they approached Statia, Global and Synfuels claim that they had already calculated the estimated project cost at roughly $25,000,000 (Canadian). On July 31, 1992, Global claims that Statia sent Global and Synfuels a statement of estimated projected construction costs, cash flow and income, in which the cost of the renovation was $23,-287,829 (Canadian). At Statia Terminals' insistence an equity reduction provision was added to the shareholder agreement under which any partner that failed to provide funds in response to calls for capital for the terminal renovation would have its investment in the project reduced. Global claims that Statia Terminals and CBI deliberately added phases to the renovation and undertook unauthorized repairs that more than doubled the cost, misrepresented the spiraling costs to Statia Terminals and Global, eventually putting Global in a situation where it had no choice but to sell out and forego its share of the profits. Global does not discuss the throughput agreement or its terms.

In 1996, Praxair acquired all of CBI's assets and repaid the loan that CBI had guaranteed in the amount of $56,097,323.44 (U.S.). Praxair subsequently filed this suit on behalf of CBI against Global and Slifka in the state courts of Illinois, seeking to recover the $60 million it paid out on CBI's behalf. Defendant Global and Slifka removed the case to federal court.

## ANALYSIS

I. Personal Jurisdiction Over Alfred Slifka

 Defendant Slifka first argues that this court lacks personal jurisdiction over him as an individual. Under Illinois law, personal jurisdiction is permitted to the full extent of the due process clause of the Constitution, which requires that an individual have sufficient minimum contacts with the forum state before he will be subject to the jurisdiction of that state's courts. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There are two types of personal jurisdiction: specific and general. Specific jurisdiction refers to "jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). To satisfy due process, specific jurisdiction requires that the suit "arise out of" or "be related to" these minimum contacts with the forum state. *Id.*

In determining whether the minimum contacts requirement is satisfied, we focus on whether the defendant has "purposefully established minimum contacts within the forum State." *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir.1998) *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Crucial to this inquiry is whether defendant should reasonably anticipate being haled into court in Illinois because he has purposefully availed himself of the privilege of conducting activities here. *Id.*

Praxair alleges that Alfred Slifka, on behalf of Global, made fraudulent representations concerning his company's interest in entering into a business arrangement with CBI in order to induce CBI to guarantee the $60,000,000 loan needed to refurbish the Point Tupper Terminals Facility, and then to buy out his 24.5% interest in PTTC. Praxair maintains that these misrepresentations occurred over months of conversations and negotiations which took place both in person and by phone, both in Massachusetts and Illinois. Praxair further points to several occasions on which Slifka proposed, negotiated and dis-

cussed these transactions in Illinois, with CBI and its representatives at CBI's corporate headquarters. We find that these contacts are sufficient to satisfy the requirements of due process, and because this action is related to the allegedly fraudulent conduct that occurred in Illinois Slifka is subject to specific personal jurisdiction in that state.

## II. Illinois Statute § 2–619(a)(3)

■ Defendants Global and Slifka next argue that this case is barred by 735 ILCS 5/2–619(a)(3) which states that, subject to the discretion of the court, a complaint should be dismissed if the court finds that there is another action pending between the same parties for the same cause. In response, Praxair argues that § 2–619(a)(3) is a procedural statute and is consequently not applicable to cases pending before a federal court. Upon reviewing the relevant case law we find that although the statute's applicability is the subject of serious debate in this district the Seventh Circuit's comments on the matter require us to conclude that § 2–619(a)(3) is a substantive provision that we must apply.[2]

The district court opinions in this jurisdiction are divided on this issue, and although the Seventh Circuit has had several opportunities to resolve the dispute it has declined to do so. The courts that have decided § 2–619(a)(3) applies in diversity cases brought before the federal courts sitting in Illinois have largely relied on Judge Will's reasoning in *Seaboard Finance Company v. Davis,* 276 F.Supp. 507 (N.D.Ill.1967), a case on which the Seventh Circuit has commented with approval.

See, e.g., *Brach & Brock Confections, Inc. v. Redmond,* 988 F.Supp. 1106 (N.D.Ill. 1997) (Shadur, J.); *Northbrook Property and Cas. Ins. Co. v. Allendale Mut. Ins. Co.,* 887 F.Supp. 173 (N.D.Ill.1995) (Shadur, J.); *International Ins. Co. v. Certain Underwriters at Lloyd's London,* 1992 WL 675951 (N.D.Ill.) (Weisberg, Mag.J.) (concluding the section applies after detailed analysis of *Colorado River* doctrine); *Ball v. Deere & Company,* 684 F.Supp. 1455 (C.D.Ill.1988) (Mihm, J.); *Locke v. Bonello,* 965 F.2d 534 (1992); *Aetna Cas. and Sur. Co. of Hartford, Connecticut v. Kerr-McGee Chemical Corp.,* 875 F.2d 1252 (7th Cir.1989). The courts that have come to the opposite conclusion largely acknowledge that Judge Will's opinion was accurate at the time it issued, but cite the Supreme Court's more recent decision in *Colorado River Water Conservation District v. U.S.,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), in finding that under the *Erie* doctrine § 2–619(a)(3) does not apply. *Basic v. Fitzroy Engineering, Ltd.,* 949 F.Supp. 1333 (N.D.Ill.1996) (Norgle, J.); *ADS Pub. Services, Inc. v. Summit Group, Inc.,* 1996 WL 332684 (N.D.Ill.) (Norgle, J.); *Mattsson v. Gerry Wood Products Co.,* 1996 WL 147921 (N.D.Ill.) (Manning, J.); *Beggerow v. Affiliated Ins. Consultants,* 1996 WL 197680 (N.D.Ill.) (Marovich, J.); *Fofi Hotel Co., Inc. v. Davfra Corp.,* 846 F.Supp. 1345 (N.D.Ill. 1994) (Nordberg, J.); *W.E. O'Neil Const. Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 721 F.Supp. 984 (N.D.Ill. 1989) (Rovner, J.) These cases generally reason that the *Colorado River* decision nullifies any substantive difference between Illinois and federal law on concur-

---

**2.** The facts giving rise to the § 2–619 dispute in this case are somewhat unusual. Plaintiff, Praxair, who opposes the application of § 2–619, voluntarily filed this suit in the state court of Illinois (a fact Praxair emphasizes later in its argument in opposition to defendants' motion for a dismissal on the grounds of *forum non conveniens* ) where § 2–619(a)(3) would have unquestionably applied. Defendants, however, who advocate application of the statute, filed a motion to remove

the case to the Northern District, where the role of that very statute is hotly in dispute. Now defendants, who would have immediately been able to avail themselves of § 2–619 absent their voluntary removal, attempt to rely on that statute in their motion to dismiss, which plaintiffs of course strenuously oppose, despite the fact that they originally selected the state court of Illinois as their preferred forum.

rent pending cases and consequently renders § 2–619(a)(3) merely procedural in nature.

Our analysis begins with the familiar doctrine of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), in which the Supreme Court held that a federal court sitting in diversity applies the substantive, but not procedural, law of the state in which it sits. The court expanded on the *Erie* doctrine in *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), where it emphasized that when exercising diversity jurisdiction a federal court is "only another court of the State" and that a federal court "cannot afford recovery if the right to recovery is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State." 326 U.S. at 108–09, 65 S.Ct. 1464. It was in *Guaranty* that the court first explained the now familiar "outcome-determinative" test to assist federal courts in determining whether a particular state provision should be considered substantive or procedural for *Erie* purposes: "And so the question is not whether a statute . . . is deemed a matter of 'procedure' in some sense. The question is . . . does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" *Id.* at 109, 65 S.Ct. 1464. In later cases, however, the Supreme Court emphasized that the outcome-determinative analysis is not intended to be used as an automatic means of procedural/substantive classification, nor is the designation of a particular rule as "procedural," whether by state law or by tradition, sufficient to place it in that category for *Erie* purposes. *Byrd v. Blue Ridge Rural Elec. Co-op.*, 356 U.S. 525, 537, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). Rather, the decision must be made by reference to the policies underlying the purpose of the *Erie* doctrine. *Hanna v. Plumer*, 380 U.S. 460, 467, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) *citing*

*Guaranty Trust Co.*, 326 U.S. at 108–112, 65 S.Ct. 1464.

In *Hanna v. Plumer* the court explained the close connection between the outcome-determinative inquiry and the court's concern with preventing, or at least deterring, the practice of forum shopping. 380 U.S. at 468, 85 S.Ct. 1136 (emphasizing that "[t]he 'outcome-determinative' test [ ] cannot be read without reference to the twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws"). The court noted that "[t]hough the choice of federal or state rule will at this point have a marked effect upon the outcome of the litigation, the difference between the two rules would be of scant, if any, relevance to the choice of a forum. [This is not a] situation where application of the state rule would wholly bar recovery." *Id.* at 469, 85 S.Ct. 1136. Similarly, the Supreme Court has interpreted *Erie* as precluding the "maintenance in the federal courts of suits to which the state has closed its courts." *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949).

In light of the Supreme Court's statements in *Hanna* and *Guaranty Trust*, we can see why at the time Judge Will wrote *Seaboard Finance Company* he concluded that § 2–619(a)(3) was substantive in nature. At that point the Supreme Court had not yet recognized a federal common law doctrine of abstention and thus it was usually incumbent upon federal courts to exercise their jurisdiction over a case even where an identical matter had been filed in another court. Judge Will stated that under *Erie* he would examine whether 1) a variance exists between the state and federal rule such that it would affect the outcome of the litigation; 2) whether the variance is of a nature that it would encourage forum shopping; and 3) whether there is some countervailing federal consideration that would justify the variance. *Id.*, at 515. Acknowledging that the federal courts allowed actions in different juris-

dictions to proceed concurrently, subject to the possibility of discretionary abatement for cases pending in another federal court, Judge Will concluded that it was clear that there would be a materially different result if the federal rule was applied instead of the Illinois approach. *Id.* at 516. He further observed that the variance was sufficiently great that forum shopping would be encouraged. *Id.* Finally, he noted that the principle of concurrent jurisdiction adopted by the federal courts did not justify overriding the first two considerations. *Id.* The principal reason federal courts assume diversity jurisdiction is to protect out-of-state litigants from abuse by state courts, he reasoned, but in a state where a litigant is barred from bringing suit in the first place that concern evaporates. *Id.* Consequently, in order to ensure a plaintiff access to a forum the only instance in which it might be proper for a federal court sitting in Illinois to deviate from the procedural rule would be where the jurisdiction of the court in which the first action was filed is uncertain. *Id.*

Although the Seventh Circuit has not decided the issue, in *Locke v. Bonello,* 965 F.2d 534 (7th Cir.1992), it gave a strong endorsement to Judge Will's reasoning in *Seaboard.* Plaintiffs in that case argued against the application of an Illinois line of cases that start the running of a one-year tolling statute upon the dismissal of a case by the district court, regardless of whether or not plaintiff thereafter appeals. They contended that when the defendant appeals a voluntary dismissal, § 2–619(a)(3) prevents the plaintiffs from refiling while the appeal is pending, thus denying them a forum unless the filing period is tolled during the pendency of the appeal. The Seventh Circuit agreed, reasoning that to

do otherwise would essentially give defendants the keys to the courthouse. 965 F.2d at 536. Although the parties did not raise the issue of whether under *Erie* § 2–619(a)(3) in fact applied to cases filed in federal court, the Seventh Circuit assumed that it did, observing that it found the reasoning in *Seaboard* persuasive and noting with approval that many district courts sitting in Illinois have taken that approach. Particularly in light of the fact that the Seventh Circuit's opinion hinged on its decision to assume that § 2–619(a)(3) applied, we think *Locke* is strongly indicative of the approach it would take in the future.

■ As numerous district courts have pointed out, however, in neither *Aetna Casualty* nor *Locke* did the Seventh Circuit discuss the relationship between § 2–619(a)(3) and the Supreme Court's subsequent decision in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[3] Although the *Colorado River* court acknowledged the "virtually unflagging obligation [they have] to exercise the jurisdiction given to them," it found that in exceptional circumstances the federal courts have a federal common law power to abstain from exercising their jurisdiction, and defer to the jurisdiction of a state court, when a prior state court action is pending. 424 U.S. at 817, 96 S.Ct. 1236. To determine whether *Colorado River* abstention is appropriate, the federal court must determine first whether the cases are "parallel," in that they involve substantially the same parties litigating substantially the same issues. If that is the case, the court examines ten factors to determine whether "exceptional circumstances" exist.[4]

3. The *Locke* court did, however, indicate that the *Colorado River* abstention might have been appropriate.

4. The court will consider 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law; 6) the adequacy of state court to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim. *See Interstate Material Corp. v. City of Chicago,*

Similarly, the Illinois cases discussing § 2–619(a)(3) explain that that section allows for dismissal of an action filed when another on the same subject is pending when the second action involves substantially the same parties and substantially the same issues. *See Philips Electronics, N.V. v. New Hampshire Ins. Co.*, 295 Ill. App.3d 895, 230 Ill.Dec. 102, 692 N.E.2d 1268, 1275–76 (1998). Several cases have examined and compared the tests under *Colorado River* and § 2–619(a)(3) in exacting detail. *See International Insurance Company*, 1992 WL 675951, at *2–*8; *ADS Publishing Services, Inc. v. Summit Group, Inc.*, 1996 WL 332684, at *1–*3; *Fofi Hotel*, 846 F.Supp. at 1346–51; *W.E. O'Neil*, 721 F.Supp. at 988–90. All these cases have observed the similarity between the analysis to be applied under § 2–619(a)(3) and *Colorado River*, and several have stated that the only substantive difference appears to be the usual remedy, which in *Colorado River* is a stay and under the Illinois statute dismissal. As did Magistrate Judge Weisberg in *International Insurance*, however, we find that although the factors considered under both approaches are similar, the presumptions about dismissal and the burden of proof on the respective parties are quite different. 1992 WL 675951, at *5. Although the cases interpreting § 2–619(a)(3) give limited discretion to the trial judge, as does the *Colorado River* approach, the language of the rule clearly presumes that dismissal is appropriate, whereas under *Colorado River* the Supreme Court repeatedly emphasized how "exceptional" such abstention is. Moreover, even if this distinction was less important, we are not free to ignore the Seventh Circuit's explicit comments on this topic. Both of the Seventh Circuit's opinions on the issue were issued after *Colora-*

do River, and both clearly support the *Seaboard* approach, despite the Seventh Circuit's refusal to expressly decide the issue. Because we are bound to follow this precedent, we apply § 2–619(a)(3) in the instant case.

■ Praxair next argues that dismissal is unwarranted because Global has failed to show that the "same cause" and "same parties" requirements are met by the second Canada case.[5] To constitute the "same cause" for purposes of § 2–619(a)(3), we must consider whether both cases arose from the same transaction or occurrence, *Quantum Chemical Corp. v. Hartford Steam Boiler Inspection & Ins. Co.*, 246 Ill.App.3d 557, 186 Ill.Dec. 496, 616 N.E.2d 686 (1993), and whether the relief sought in both actions rests on substantially the same set of facts. *Bank of Northern Illinois v. Nugent*, 223 Ill.App.3d 1, 165 Ill.Dec. 514, 584 N.E.2d 948 (1991). It is not necessary that both cases rely upon the same legal theory, that the burden of proof be the same in both cases or that the relief sought be identical. *See Quantum Chemical*, 186 Ill.Dec. 496, 616 N.E.2d at 688. As for the "same parties" requirement, the parties need not be identical so long as their interests are sufficiently similar. *Philips Electronics*, 295 Ill. App.3d 895, 230 Ill.Dec. 102, 692 N.E.2d 1268. A corporate parent and its subsidiaries are considered sufficiently similar. *Cummings v. Iron Hustler Corp.*, 118 Ill. App.3d 327, 73 Ill.Dec. 829, 454 N.E.2d 1078 (1983); *Aetna Casualty & Surety Co. v. Kerr–McGee Chemical Corp.*, 875 F.2d 1252, 1257 (7th Cir.1989).

■ Applying these standards to the situation before us, we find that the requirements of § 2–619(a)(3) are satisfied.

847 F.2d 1285, 1286 (7th Cir.1988). No one factor should be determinative, but all should be considered carefully, taking into account both the court's obligation to exercise jurisdiction and the combination or factors counseling against that exercise. *Id.*

5. Although Praxair attempts to focus only on Global's first Canada case filed against Point Tupper Terminal Company in December 1993, it is clear that for our purposes the relevant concurrent action is the second case, filed by Global in April 1996 against CBI, Statia Terminals and Statia Point Tupper Corporation.

In the second Canada action, Global alleges that the defendants fraudulently kept Global from receiving information about the rising cost of the terminal renovation until it was too late for Global to modify its position, and that by the time Global was informed nothing could be done and Global was effectively forced to sell its shares to the other investors and discontinue its participation in the venture (cplt. in second Canada action, aff. of Robert W. Carmichael, exh.C). In comparison, Praxair's complaint in this court alleges that Global fraudulently represented that it intended to lease space in the terminal facility and that as a result it suffered (through CBI) by guaranteeing a loan that it otherwise would not have guaranteed and by buying Global's interest in the facility. Praxair argues that unlike the Canada action, this case involves damages flowing from the guaranty agreement. However, the source of damages is not the relevant inquiry. Although Global does not make an issue of the throughput agreement in the second Canadian action, that is not surprising if, as Praxair maintains, Global breached that contract. What is relevant is that both parties claim that almost from the onset of their business relationship, including the determination to increase the cost of the refurbishment by having CBI make the guaranty and the buyout transaction, the other party was acting with ulterior motives and fraudulent intent. It thus seems clear that although the injuries alleged by Praxair and Global are different, the factual inquiry essential to the resolution of both claims is identical: What were the circumstances that gave rise to Global's decision to lease storage space at the facility, why did they refuse to honor the throughput agreement, and what were the circumstances of the guaranty, refurbishment and buyout agreements?

Similarly, the "same parties" requirement of § 2–619(a)(3) is met. The defendants in the second Canadian case are CBI, Statia Terminals, Statia Point Tupper Corporation and Statia Terminals Point Tupper, Inc. Here, Praxair is the sole plaintiff. However, because Praxair did not acquire CBI until after the events that constitute the subject matter of this litigation took place, Praxair's interest in this matter is directly derivative of CBI's and the two thus have identical interests in this litigation.

■ Finally, although neither party discusses it, even if the same parties and same cause requirements are met, in Illinois a trial judge has limited discretion to retain the case after considering the following factors: 1) whether the prior proceeding will be recognized under the principles of comity; 2) whether refusing to take the case will prevent a multiplicity of suits and vexatious or harassing conduct; 3) whether the parties are likely to receive relief in the foreign jurisdiction; and 4) whether the foreign judgment will be *res judicata* in the local forum. *See Kellerman v. MCI Telecommunications Corp.*, 112 Ill.2d 428, 98 Ill.Dec. 24, 493 N.E.2d 1045, 1053 *cert. denied*, 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986). Here, each of these factors weighs in favor of dismissing the present case. A Canadian judgment would be recognized under the principles of comity, *see Northbrook Property and Casualty*, 887 F.Supp. at 175; *Ball v. Deere & Company*, 684 F.Supp. 1455, 1457 (C.D.Ill.1988); there is no allegation that relief in a Canadian court would not be complete; it will be easier for most of the parties to participate in Canada (and the case is tenuously related to Illinois); and allowing the Canadian case to proceed in full will certainly avoid a multiplicity of suits. Moreover, Illinois courts considering similar situations have observed that it is appropriate to use § 2–619(a)(3) to dismiss where the subsequently filed federal case states what amounts to a compulsory counterclaim in the previously filed action, precisely the situation here. *See Quantum Chem.*, 186 Ill.Dec. 496, 616

N.E.2d at 689.[6]

## CONCLUSION

For the reasons stated above, Global's motion to dismiss is granted.

## MEMORANDUM AND ORDER

Defendant Praxair, Inc. (Praxair) has filed a motion to reconsider this court's memorandum and opinion dismissing its action against defendants Alfred Slifka (Slifka) and Global Petroleum Corporation (Global) on the grounds that it is barred by the Illinois Code of Civil Procedure, Section 2–619(a)(3), which requires Illinois courts to dismiss an action filed in that state when a case involving substantially the same cause and the same parties (or parties with sufficiently similar interests) is pending in another jurisdiction.[1] *See Philips Electronics, N.V. v. New Hampshire Ins. Co.*, 295 Ill.App.3d 895, 230 Ill. Dec. 102, 692 N.E.2d 1268, 1275–76 (1998). We concluded that § 2–619(a)(3) is a substantive provision that federal courts in this jurisdiction must apply to cases removed from the Illinois courts and dismissed Praxair's action on the ground that in 1996 Global filed an action in Canada satisfying the requirements of that statute.

■ Praxair first argues that it was inappropriate for us to dismiss its claim against Slifka on § 2–619 grounds because Global, not Slifka, made that argument. We disagree. The Illinois cases on the issue require not that the parties in the prior pending action be identical to those in the subsequent suit, but that the parties in both actions have substantially similar interests. *Id.* There is no Illinois case law on whether the "similar interests" requirement is satisfied when the parties in the second action are both the shareholders of a closely-held corporation and the corporation itself, while the parties in the first action involve only the corporation. However, at least one court found dismissal appropriate in the analogous situation of a partnership and its partners. *See Baker v. Salomon*, 31 Ill.App.3d 278, 334 N.E.2d 313, 317 (1975). We disagree with Praxair's contention that *Quantum Chemical Corp. v. Hartford Steam Boiler Inspection & Insurance Co.*, 246 Ill.App.3d 557, 186 Ill.Dec. 496, 616 N.E.2d 686, 688 (1993), controls this issue because that case involved two entirely independent defendant insurance companies, only one of which was a party to the prior pending action. The court there refused to dismiss the case against the insurance company that was a stranger to the earlier filed action, but issued no opinion on whether it would take the same course in a case where the two companies were intertwined. *Quantum* thus provides little guidance in the shareholder/corporation co-defendant situation before us.

■ We are more concerned with Praxair's contention that Slifka cannot be joined in the Canadian action due to that court's lack of personal jurisdiction over the defendant and the stage of those proceedings. Praxair provides no Canadian authority to this effect.[2] We have similar

---

**6.** In a last minute flurry of filings, the parties have submitted several affidavits debating whether the Canadian court will permit Praxair to be added as a party in the second Canadian action. At this point we see no indication that the court would refuse to permit the modification to that proceeding. The rule of civil procedure governing joinder of parties in Nova Scotia is as liberal as our own. There is no question that Praxair is an interested party. The Canadian action has not been set for trial and there remains a substantial amount of discovery to be completed. Praxair's attorneys are no strangers to that litigation. Accordingly, we think it unlikely that the Canadian court will refuse to admit Praxair to the case pending in that jurisdiction.

**1.** The facts of this case were stated in our previous order and need not be reiterated here.

**2.** As Praxair is aware, the affidavit of its Canadian attorney, David Farrar, expressing his opinion that the Canadian court lacks jurisdiction over Slifka or Praxair's claims does not constitute legal authority.

concerns over Praxair's claim (albeit inappropriately raised for the first time in this motion) that it will not be tried by jury in the Canadian action, although again Praxair provides no authority for this contention and the statutes provided by Global call the argument into question. *See* Slifka's and Global's Response to the Mot. for Reconsid., Appendix, Nova Scotia Civ. Pro. R. 34. As to Praxair's argument that dismissing the case against Slifka creates a *de facto* compulsory third party claim rule for Canada, the case upon which it relies, *Quantum Chemical,* and the authority cited therein, *A.E.Staley Manufacturing Company v. Swift & Company,* 84 Ill.2d 245, 50 Ill.Dec. 156, 419 N.E.2d 23, 27 (1981), involved special circumstances not present in this case. *For discussion see Brach & Brock Confections, Inc. v. Redmond,* 988 F.Supp. 1106, 1108 (N.D.Ill. 1997) (Shadur, J.). Nonetheless, because there is no clear answer to many of these procedural concerns, instead of dismissing Praxair's case, it is more appropriate to stay the proceeding against both Global and Slifka until the resolution of the second Canadian action. *Kellerman v. MCI Telecommunications Corp.,* 112 Ill.2d 428, 98 Ill.Dec. 24, 493 N.E.2d 1045, 1053 (1986). We observe that we would reach a similar conclusion under the *Colorado River* doctrine. *Hearne v. Board of Education of the City of Chicago,* 185 F.3d 770, 778 (7th Cir.1999).

### CONCLUSION

For the reasons stated above, we vacate our earlier dismissal and stay Praxair's action against both Global and Slifka until the second Canadian action is resolved.